IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Titan Consortium 1, LLC,<br><br>    1209 Orange Street<br>    Wilmington, DE 19801<br><br>         *Petitioner*,<br><br>    v.<br><br>The Argentine Republic,<br><br>    Procurador del Tesoro de la Nación<br>    Posadas 1641<br>    C1112ADC, Buenos Aires<br>    República Argentina<br><br>         *Respondent*. | **Civil Action No.** _____ |

**Petition to Enforce Arbitral Award**

Petitioner Titan Consortium 1, LLC ("Titan") brings this action to enforce an arbitral award (the "Award") issued on July 21, 2017, in ICSID Case No. ARB/09/1 against Respondent, the Argentine Republic ("Argentina"), following arbitration proceedings conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). Titan also seeks to enforce an additional award of costs and attorney fees issued against Argentina following proceedings pursuant to the ICSID Convention on Argentina's application to annul the Award (the "Annulment Decision"). Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention, including both the Award and the Annulment Decision, are not subject to collateral attack and must be enforced and given the same full faith and credit as if the award were a final judgment of a court in the United States.

Accordingly, Titan requests that this Court (1) enter an order enforcing the Award and the Annulment Decision in the same manner as a final judgment issued by a court of one of the several states, and (2) enter judgment against Argentina and in Titan's favor in the amounts of $325,272,319 plus interest.

Certified copies of the Award and the Annulment Decision are attached as Exhibits A and B, respectively, to the Declaration of Matthew S. Rozen ("Rozen Declaration"), Exhibit 1 hereto. A copy of the ICSID Convention is attached hereto as Exhibit 2.

## Parties

1. Petitioner Titan is a company constituted and registered under the laws of Delaware. Titan brings this suit in its capacity as an assignee of the Award.

2. The claimants to the ICSID arbitration are Teinver S.A., Transportes de Cercanías S.A., and Autobuses Urbanos del Sur S.A. (collectively, "Claimants"). Claimants have sold and fully assigned to Titan full title to the Award and any interest, rights, or proceeds tied to the Award or the ICSID arbitration, including all rights under the Annulment Decision. Each of the three claimants has relinquished fully any claims to the Award and the Annulment Decision.

3. Respondent Argentina is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602-1611.

## Jurisdiction and Venue

4. This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA. Pursuant to Section 1605(a)(1) of the FSIA, Argentina is not entitled to immunity from this Court's jurisdiction in an action to enforce an ICSID Convention award because it has waived that immunity by agreeing to

the ICSID Convention. *See Tatneft v. Ukraine*, No. 18-7057, 2019 WL 2563159, at *1-2 (D.C. Cir. May 28, 2019) (per curiam); *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013). Further, pursuant to Section 1605(a)(6) of the FSIA, Argentina is not immune from suit because this is an action to enforce an arbitral award governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards. *Blue Ridge*, 735 F.3d at 85.

5. This Court also has subject-matter jurisdiction pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

6. This Court has personal jurisdiction over Argentina pursuant to the FSIA, 28 U.S.C. § 1330(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(1) and (4).

7. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. does "not apply to enforcement of awards rendered pursuant to the [ICSID] convention." 22 U.S.C. § 1650a(a). Thus, the FAA's jurisdictional requirements do not apply to this action.

## The Underlying Dispute

8. Claimants are Spanish companies that invested in Argentina in 2001 by purchasing 100% of the shares of the company Air Comet, which in turn owned 99.2% of the shares of the Argentine company Interinvest. Award ¶¶ 176, 179, 481. Interinvest owned 92.1% and 90%, respectively, of the shares of the airlines Aerolíneas Argentinas S.A. ("ARSA") and Austral-Cielos del Sur S.A. ("AUSA") (collectively, the "Airlines"). *Id.* ¶¶ 370-72, 376. In 2008, Interinvest entered "a binding contract" with the Government of Argentina providing for the sale of Interinvest's shares of the Airlines at a price to be determined in accordance with a defined mechanism. *Id.* ¶ 850. Argentina abandoned that purchase contract several months later and

acquired the Airlines "by way of expropriation without notice to Interinvest or Claimants." *Id.* ¶ 855.

9. Because the Claimants are Spanish companies, their investments are protected by the bilateral investment treaty between Argentina and Spain—the Agreement between the Argentine Republic and the Kingdom of Spain on the Promotion and Protection of Investments (the "Argentina-Spain Treaty"), Exhibit 3 hereto. The Argentina-Spain Treaty is intended to "promot[e] and protec[t]" "investments" and "intensify" "economic cooperation" between Argentina and Spain "for the economic benefit of both countries." *Id.*, pmbl.

10. Two provisions of the Argentina-Spain Treaty provide for arbitration under the ICSID Convention of treaty disputes between a contracting party and an investor of the other contracting party.

    a. Article X of the Argentina-Spain Treaty provides that upon satisfaction of prearbitration grievance procedures, the investor may submit the dispute to the International Centre for Settlement of Investment Disputes ("ICSID") for arbitration under the ICSID Convention, provided that both Argentina and Spain are parties to the ICSID Convention.

    b. In addition, Article IV(2) of the Argentina-Spain Treaty is a "most favorite nations" provision that requires each contracting party to treat investors of the other contracting party "no less favourabl[y]" than any "third country['s]" investors. Argentina's bilateral investment treaty with the United States provides, in turn, that a U.S. investor may consent in writing to submission of a dispute with Argentina to ICSID for arbitration under the ICSID Convention, and then initiate arbitration proceedings without first satisfying any additional prearbitration grievance

procedures.[1] A copy of the U.S.-Argentina Treaty is attached hereto as Exhibit 4. Article IV(2) permits a Spanish investor to initiate arbitration proceedings against Argentina under the ICSID Convention in the same manner as a U.S. investor.

11. Argentina and Spain are both parties to the ICSID Convention.[2] As a party to the ICSID Convention, Argentina has consented to arbitrate disputes arising under the Argentina-Spain Treaty pursuant to the ICSID Convention and in accordance with the terms of the Argentina-Spain Treaty. Award ¶ 7.

12. On December 11, 2008, Claimants filed a request with ICSID for arbitration under the ICSID Convention. Award ¶¶ 6-7. ICSID registered the request on January 30, 2009, and notified the parties of the registration. *Id.* ¶ 8.

13. An ICSID arbitral tribunal (the "Tribunal") was constituted on January 4, 2010. Award ¶ 18.

14. The Tribunal conducted 16 days of hearings: a Hearing on Jurisdiction and Provisional Matters in Washington, District of Columbia, from May 27 through May 31, 2011, Award ¶ 35; a Hearing on the Merits and Counterclaim in Washington, D.C., from March 4 through March 13, 2014, *id.* ¶ 92; and a Hearing on Claimants' Third Application for Provisional Measures in Washington, D.C., on November 3, 2015, *id.* ¶ 134.

15. On December 21, 2012, the Tribunal issued its Decision on Jurisdiction ("Jurisdictional Decision"), an 80-page decision that is appended to the Award and is therefore

---

[1] Treaty Concerning the Reciprocal Encouragement and Protection of Investment, U.S.-Arg., art. VII(3)-(4), Nov. 14, 1991.

[2] ICSID, *List of Contracting States and Other Signatories of the Convention* 1, 4 (June 9, 2020), https://icsid.worldbank.org/sites/default/files/ICSID-3.pdf.

included as part of Exhibit A to the Rozen Declaration. On July 21, 2017, the Tribunal issued its 398-page Award.

16. Between the Decision on Jurisdiction and the Award, the Tribunal determined, among other things, that:

a. The Tribunal had jurisdiction to hear the claims submitted to it by the Claimants, and their claims were admissible, Jurisdictional Decision ¶ 333; Award ¶¶ 223, 233, 242, 249-50;

b. Argentina had breached its obligations under the Argentina-Spain Treaty by: (1) failing to provide fair and equitable treatment to the Claimants' investments within Argentina's territory, in violation of Article IV(1) of the Argentina-Spain Treaty; (2) hindering the management, maintenance, use, and sale of Claimants' investments by taking unjustified measures, in violation of Article III(1) of the Argentina-Spain Treaty; and (3) unlawfully expropriating the Airlines by taking them not in accordance with the law and failing to pay adequate compensation, in violation of Article V of the Argentina-Spain Treaty, Award ¶¶ 865, 925, 1040, 1068, 1147(a)-(c); and

c. The Claimants proved damages flowing from Argentina's breaches of the Treaty of $320.76 million in addition to losses in the amount of $3,494,807, Award ¶¶ 1116, 1146.

17. The Tribunal found that Argentina had—through a contract it entered with Interinvest in 2008—created the legitimate expectation that Argentina would purchase Interinvest's shares of the Airlines for a price derived from a mechanism established in the contract. Award ¶¶ 855-57. The Tribunal further determined that Argentina's "decision to

proceed by expropriation lacked transparency and was arbitrary." *Id.* ¶ 856. The Tribunal concluded that Argentina's failure to comply with the purchase agreement and its expropriation of the Airlines breached the fair and equitable treatment standard in Article IV(1) and violated the prohibition on imposing unjustified measures in Article III(1) of the Argentina-Spain Treaty. *Id.* ¶¶ 865, 935.

18. The Tribunal further concluded that Argentina's expropriation of the Airlines violated Article V of the Argentina-Spain Treaty because it was not in accordance with law, Award ¶¶ 1011, 1040, and that Argentina failed to pay the Claimants adequate compensation for their investment by refusing to complete the valuation the parties had agreed to and using a different valuation methodology in the formal expropriation, *id.* ¶ 1039.

19. The Tribunal ordered Argentina to pay $320,760,000 in compensation, together with interest from December 30, 2008, until the date of payment in full at a rate corresponding to the U.S. six-month Treasury Bill rate, compounded semi-annually on the principal sum. Award ¶ 1147(d)-(e). In addition, the Award requires Argentina to reimburse the Claimants $3,494,807 as a contribution toward reasonable legal fees and other costs of the arbitration proceedings, together with post-award interest from July 21, 2017, until the date of payment in full, also at the U.S. six-month Treasury Bill rate, compounded semi-annually. *Id.* ¶ 1147(f).

20. On November 17, 2017, Argentina filed an application for annulment of the Award. Annulment Decision ¶ 8. ICSID registered the request on November 22, 2017, provisionally stayed the Award, and notified the parties of the stay. *Id.* ¶ 9.

21. An ICSID *ad hoc* Committee (the "Committee") was constituted on December 21, 2017. Annulment Decision ¶ 10.

22. The Committee held a Hearing on Annulment in Washington, District of Columbia, on February 5 and 6, 2019.  Annulment Decision ¶ 41.

23. On May 29, 2019, the Committee issued its Decision on Argentina's Application for Annulment (the "Annulment Decision").  The Committee denied Argentina's request for annulment.  Annulment Decision ¶ 258(1).  It also ordered Argentina to pay the Claimants $1,017,512 in representation costs and expenses.  *Id.* ¶ 258(2).

24. In November 2020, Claimants entered into agreements with Titan assigning to Titan full title to the Award and any interest, rights, or proceeds tied to the Award or the ICSID arbitration, including all rights under the Annulment Decision.

## Legal Basis for Relief

25. The ICSID Convention establishes a framework for the resolution of investment disputes between a foreign sovereign party to the Convention and a national of another State party to the Convention.  ICSID is the World Bank-affiliated arbitral institution that administers arbitral proceedings under the ICSID Convention, including the arbitration at issue here.

26. Article 53 of the ICSID Convention provides that an award rendered under the auspices of ICSID is binding on the parties and is not subject to any appeal or to any other remedy except those provided for in the ICSID Convention itself.  ICSID Convention, art. 53.  Article 53 further requires each party to an award to abide by and comply with the terms of the award except to the extent that enforcement is stayed.  In other words, in the absence of an order staying enforcement, an award is enforceable without delay.

27. Article 54 of the ICSID Convention provides that contracting parties must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in

that State." ICSID Convention, art. 54(1). Article 54 further provides that a contracting state "with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id*.

28. Article 52(4) of the ICSID Convention provides that Articles 53 and 54 apply equally to proceedings on application for annulment.

29. By unconditionally undertaking to recognize and enforce any ICSID award in its own territories pursuant to Article 54, subject only to the remedies provided for in the ICSID Convention, each Contracting State agreed that should an award be made against it, the competent authority of another Contracting State not only has the *jurisdiction* to enforce that award, but indeed an obligation under international law to do so (and where given the force of law in a particular municipal law, also a domestic law obligation). Accordingly, in becoming a State party to the ICSID Convention, and in particular pursuant to Article 54, a State submits to the jurisdiction of the national courts of other Contracting States and/or waives any immunity from suit in those national courts at the stage of recognition and enforcement of an ICSID award.

30. The United States is a contracting party to the ICSID Convention,[3] and is therefore obligated to enforce the Award and the Annulment Decision as if they were final judgments of a court in the United States. That obligation is fulfilled by 22 U.S.C. § 1650a, which provides:

> (a) An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

---

[3] https://icsid.worldbank.org/sites/default/files/2021_Aug_4_ICSID_3_ENG.pdf.

31. Arbitral awards issued against a foreign state pursuant to the ICSID Convention may be enforced by bringing a plenary action in federal court in compliance with the requirements for commencing a civil action under the Federal Rules of Civil Procedure, and with the personal jurisdiction, service, and venue requirements of the FSIA. *See Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 49-50 (D.D.C. 2015); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117-20 (2d Cir. 2017).

32. Awards issued pursuant to the ICSID Convention are not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a. "Member states' courts are . . . not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro*, 863 F.3d at 102.

33. The ICSID Convention therefore "reflects an expectation that the courts of a member nation will treat the award as final." *Mobil Cerro*, 863 F.3d at 102; *see also id*. at 118 (noting that an "ICSID award-debtor . . . [is] not . . . permitted to make substantive challenges to the award"); ICSID Convention, arts. 53(1), 54(1). Consistent with this mandate, 22 U.S.C. § 1650a(a) provides that the FAA "shall not apply to enforcement of awards rendered pursuant to the convention," thereby "mak[ing] [the FAA's defenses] unavailable to ICSID award-debtors in federal court enforcement proceedings," *Mobil Cerro*, 863 F.3d at 120-21. District courts thus enforce ICSID awards without allowing substantive challenges to enforcement of the awards. *See, e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 1:17-cv-1457, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of*

*Peru*, 904 F. Supp. 2d 131, 132-34 (D.D.C. 2012); *Republic of Panama v. Jurado*, No. 8:12-cv-1647, ECF No. 18 (M.D. Fla. June 13, 2013).

34. Pecuniary obligations established in an annulment decision are also enforceable under § 1650a in the same manner as an ICSID award. *See OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 1:16-cv-1533, 2019 WL 2185040, at *8 (D.D.C. May 21, 2019).

## Cause of Action and Request for Relief

35. Arbitral awards and annulment decisions issued pursuant to the ICSID Convention are subject to mandatory enforcement in the courts of the United States, which must give those awards the same full faith and credit as a final judgment issued by a state court. 22 U.S.C. § 1650a(a); *see OI*, 2019 WL 2185040, at *8.

36. The Award and the Annulment Decision were rendered in accordance with the ICSID Convention against Argentina and in favor of Claimants. Because the Claimants assigned to Titan full title to the Award and all interest, rights, and proceeds in the Annulment Decision, Titan is entitled to enforce against Argentina the pecuniary obligations imposed by the Award and the Annulment Decision.

37. Accordingly, Titan is entitled to an order (a) enforcing the Award and the Annulment Decision in the same manner as a final judgment issued by a court of one of the several states, and (b) entering judgment in Titan's favor in the amounts specified in the Award and the Annulment Decision.

WHEREFORE, Titan requests that the Court enter an order:

(a) enforcing the Award against Argentina in the same manner as a final judgment issued by a court of one of the several states; and

(b) entering judgment against Argentina and in Titan's favor ordering Argentina to pay Titan:

(i) $320,760,000 in principal under the Award;

(ii) interest on that principal at a rate corresponding to the six-month U.S. Treasury Bill rate from December 30, 2008, until the date of payment in full, compounded semi-annually;

(iii) $3,494,807 in costs and attorneys' fees under the Award;

(iv) interest on those costs and attorneys' fees at a rate corresponding to the six-month U.S. Treasury Bill rate from July 21, 2017, until the date of payment in full, compounded semi-annually;

(v) $1,017,512 in costs and attorneys' fees under the Annulment Decision;

(vi) pre-judgment interest on those costs and attorneys' fees at the prime rate from May 29, 2019, until the date of judgment; and

(vii) post-judgment interest on those costs and attorneys' fees at the rate specified in 28 U.S.C. § 1961.

Dated: August 24, 2021                    Respectfully submitted,

/s/ Matthew D. McGill
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Ankita Ritwik, D.C. Bar #1024801
aritwik@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Titan Consortium 1, LLC*