**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TITAN CONSORTIUM 1, LLC,

              Petitioner,

v.

THE ARGENTINE REPUBLIC,

              Respondent.

Case No. 1:21-cv-02250 (JMC)

**REPLY MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Carmine D. Boccuzzi, Jr.  (D.C. Cir. NY0335)
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Rathna J. Ramamurthi  (D.C. Cir. NY0337)
2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1515

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

TITAN'S PETITION IS TIME-BARRED ............................................................................ 2

    A.   The Court Should "Borrow" The Three-Year Statute of
         Limitations Applicable to FAA Enforcement Proceedings ............................ 2

    B.   If The Court Looks To State Law Then D.C. Code § 16-4425
         – Applicable To The Enforcement of Arbitral Awards – Is
         More Appropriately Applied Here ................................................................... 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) ............................................................................................... 6

*Altmann v. Repub. of Austria*,
142 F. Supp. 2d 1187 (C.D. Cal. 2001) ................................................................. 5

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ............................................................................................. 14

*Bd. of Regents of Univ. of State of N. Y. v. Tomanio*,
446 U.S. 478 (1980) ............................................................................................... 4

*Blanco v. Am. Tel. & Tel. Co.*,
689 N.E.2d 506 (N.Y. 1997) ............................................................................... 14

*Blue Ridge Invs., LLC v. Repub. of Arg.*,
735 F.3d 72 (2d Cir. 2013) .................................................................................... 3

*Blue Ridge Invs., LLC v. Repub. of Arg.*,
902 F. Supp. 2d 367 (S.D.N.Y. 2012) .............................................................. 6, 12

*Cassirer v. Kingdom of Spain*,
461 F. Supp. 2d 1157 (C.D. Cal. 2006) ................................................................ 5

*Duke Energy Int'l Peru Invs. No. 1 LTD. v. Repub. of Peru*,
904 F. Supp. 2d 131 (D.D.C. 2012) ..................................................................... 14

*Doe v. Islamic Salvation Front*,
257 F. Supp. 2d 115 (D.D.C. 2003) ....................................................................... 2

*Flatow v. Islamic Repub. of Iran*,
76 F. Supp. 2d 28 (D.D.C. 1999) .......................................................................... 8

*Flight Options, LLC v. Int'l Bhd. of Teamsters, Airline Div.*,
315 F. Supp. 3d 318 (D.D.C. 2018) ....................................................................... 4

*Gater Assets Ltd. v. AO Gazsnabtranzit*,
413 F. Supp. 3d 304 (S.D.N.Y. 2019) ................................................................... 4

*InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*,
No. CV 20-817 (JDB), 2021 WL 2665406 (D.D.C. June 29, 2021) .......................................13

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
364 F.3d 274 (5th Cir. 2004) .....................................................................................................6

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
397 F. Supp. 3d 34 (D.D.C. 2019) ...........................................................................................13

*Micula v. Gov't of Rom.*,
104 F. Supp. 3d 42 (D.D.C. 2015) ...........................................................................................11

*Micula v. Gov't of Rom.*,
404 F. Supp. 3d 265 (D.D.C. 2019) .........................................................................................14

*Miminco, LLC v. Dem. Rep. Congo*,
79 F. Supp. 3d 213 (D.D.C. 2015) ...........................................................................................14

*Mobil Cerro Negro, Ltd. v. Bolivarian Repub. of Venez.*,
863 F.3d 96 (2d Cir. 2017) ...............................................................................................3, 9, 11

*Nat'l Am. Corp. v. Fed. Repub. of Nigeria*,
448 F. Supp. 622 (S.D.N.Y. 1978) .............................................................................................7

*OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*,
No. 19-CV-2619 (APM), 2020 WL 6342886 (D.D.C. Oct. 29, 2020) ........................................5

*Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Com., Purchase Directorate*,
360 F.2d 103 (2d Cir. 1966) .......................................................................................................6

*Rovin Sales Co. v. Socialist Repub. of Rom.*,
403 F. Supp. 1298 (N.D. Ill. 1975) .............................................................................................7

*RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*,
No. 1:19-CV-03783 (CJN), 2021 WL 1226714 (D.D.C. Mar. 31, 2021)...................................13

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009).........................................................................................6

*Saudi Basic Indus. Corp. v. Exxonmobil Corp.*,
194 F. Supp. 2d 378 (D.N.J. 2002) .............................................................................................5

*Schlumberger Tech. Corp. v. United States*,
195 F.3d 216 (5th Cir. 1999) .......................................................................................................8

*Sisso v. Islamic Repub. of Iran,*
  448 F. Supp. 2d 76 (D.D.C. 2006) ........................................................................5

*Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic,*
  741 F. App'x 832 (2d Cir. 2018) .......................................................................5-6

*TECO Guat. Holdings, LLC v. Repub. of Guat.,*
  414 F. Supp. 3d 94 (D.D.C. 2019) .....................................................................14

*Tidewater Inv. SRL v. Bolivarian Repub. of Venez.,*
  No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) .........................11

*Watkins v. Conway,*
  385 U.S. 188 (1966) ...........................................................................................11

**Statutes**

9 U.S.C. § 1 ...............................................................................................................7

9 U.S.C. § 201 ...........................................................................................................3

9 U.S.C. § 207 ................................................................................................. *passim*

22 U.S.C. § 1650a ............................................................................................ *passim*

28 U.S.C. § 1334(a) ..................................................................................................3

28 U.S.C. § 1338(a) ..................................................................................................3

28 U.S.C. § 1391 ...................................................................................................4, 5

28 U.S.C. § 1609 .................................................................................................. 8-9

28 U.S.C. § 1610 .................................................................................................. 8-9

28 U.S.C. § 1963 ....................................................................................................11

D.C. Code § 12-307 ...........................................................................................10, 12

D.C. Code § 12-301(8)........................................................................................2, 15

D.C. Code § 15-101 .....................................................................................9, 10, 13

D.C. Code § 16-4425 .........................................................................................2, 15

N.Y. C.P.L.R. § 5402(b) ........................................................................................................12

**Other Authorities**

ICSID Convention, Art. 25 ........................................................................................................5

ICSID Convention, Art. 53 ......................................................................................................11

ICSID Convention, Art. 54 ......................................................................................................11

ICSID Convention, Art. 55 ........................................................................................................8

Respondent the Republic of Argentina (the "Republic") respectfully submits this reply memorandum in further support of its motion to dismiss the petition of Petitioner Titan Consortium 1, LLC ("Titan") pursuant to Federal Rule of Civil Procedure 12(b)(6) as time-barred.

## PRELIMINARY STATEMENT

Titan does not argue, nor could it, that the absence of a limitations period in 22 U.S.C. § 1650a means that an assignee of an ICSID arbitral award has an unlimited time to seek to convert that award into a federal court judgment. As both parties agree, the Court's task is to determine what limitations period to apply to this action—from an analogous federal statute or from state law. Here, there is a compelling federal interest in uniformity of enforcement proceedings with respect to ICSID arbitral awards, so much so that Congress divested state courts from exercising jurisdiction over such proceedings. That interest strongly favors the borrowing of the federal three-year limitations period in the legislation implementing another treaty of the United States—the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 207.

Moreover, when Congress enacted Section 1650a and directed that ICSID awards receive the same full faith and credit due "a final judgment of a court of general jurisdiction of one of the several States," the statutes in the District of Columbia addressing the enforcement of a sister state judgment and the limitations period applicable to enforcing a D.C. Superior Court judgment were already in place. Those statutes by their terms cannot apply to an ICSID award even if deemed a sister state judgment because neither establish *any* applicable D.C. limitations period; one applies only to D.C. judgments, and the other points to the sister state's limitations period, neither of which governs here. Accordingly, it strains credulity that Congress could have

intended for ICSID awards sought to be enforced in this Court to have an indeterminate (not simply non-uniform) limitations period.

Finally, even if the Court were to look to D.C. law for a limitations period to borrow, the closest analogue, the D.C. statute for confirming an arbitral award, is also subject to a three-year limitations period.  *See* D.C. Code § 16-4425; D.C. Code § 12-301(8).

Accordingly, Titan's action is time-barred under either a federal or state limitations period and should be dismissed.

## ARGUMENT

## TITAN'S PETITION IS TIME-BARRED

### A.  The Court Should "Borrow" The Three-Year Statute of Limitations Applicable to FAA Enforcement Proceedings

As Titan concedes, Pet. Br. at 6-7, where, as here, a federal statute on which its action is based does not contain a limitations period, the Court must borrow a limitations period from another source.  Rep. Br. at 4.[1]  As set forth in the Republic's opening brief, although courts often look to relevant state law to borrow a limitations period, it is "significantly more appropriate" to look to another federal statute to find a limitations period especially where there are important "federal policies at stake."  *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983); *Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 118-19 (D.D.C. 2003) (citing *Reed v. United Transp. Union,* 488 U.S. 319, 324 (1989)).

---

[1] Unless otherwise noted, terms are defined in the Memorandum of Law of the Republic of Argentina in Support of its Motion to Dismiss the Petition to Enforce Arbitral Award (Jan. 14, 2022), ECF No. 12 ("Rep. Br.").  "Pet. Br." is Petitioner's Opposition to Respondent's Motion to Dismiss (Jan. 28, 2022), ECF No. 13.  As noted previously, Rep. Br. at 3 n.1, the Republic does not waive and expressly preserves all rights and defenses related to the purported assignments among Titan, Claimants, and other entities, as well as all rights and defenses in connection with enforcement in relation to awards under the ICSID Convention.

Here, Section 1650a is animated by important federal interests in the uniformity of ICSID enforcement proceedings. *See* Rep. Br. at 4-8. The statute provides that an ICSID arbitral award "shall create a right arising under a treaty of the United States," an exclusively federal domain. 22 U.S.C. § 1650a(a). The strongest indication of Congressional interest in uniformity is its determination to vest jurisdiction over the conversion of an unenforceable ICSID arbitral award into an enforceable court judgment exclusively in the federal courts, with no role for state courts to play in the statutory scheme, *see* 22 U.S.C. § 1650a(b), much like the restriction of patent, copyright, and bankruptcy cases solely to the federal courts, *see* 28 U.S.C. § 1338(a); 28 U.S.C. § 1334(a). Indeed, the Second Circuit Court of Appeals has recognized a particular need in ICSID award enforcement actions for "national uniformity in procedure" and to promote "the values of predictability and federal control that foreign affairs demands." *Mobil Cerro Negro, Ltd. v. Bolivarian Repub. of Venez.*, 863 F.3d 96, 118 (2d Cir. 2017).[2]

Those federal interests are best served by application of the three-year limitations period for the enforcement of foreign arbitral awards found in Chapter 2 of the FAA, 9 U.S.C. § 207. The legislation implementing the New York Convention, like 22 U.S.C. § 1650a, was adopted with the purpose of enabling "the uniform and efficient enforcement of arbitration agreements and awards in foreign commerce." Kearney Statement at 8 (Ex. D, Decl. of Rathna J. Ramamurthi) (Jan. 14, 2022, ECF No. 12-5). Also like 22 U.S.C. § 1650a, 9 U.S.C. § 201 *et seq.* was implemented to give effect to treaty obligations undertaken by the United States. It is these strong federal interests—in addition to state law's "fail[ure] to provide a *perfect* analogy," Pet.

---

[2] While the district court in *Blue Ridge* addressed the appropriate limitations period, the Second Circuit found that it did not have appellate jurisdiction to consider the issue. *Blue Ridge Invs., LLC v. Repub. of Arg.*, 735 F.3d 72, 79 n.11 (2d Cir. 2013). Accordingly, *Mobil Cerro Negro*'s call for uniformity carries even more weight.

Br. at 10-11, as established below—that warrant application here of a limitations period adopted

from a federal statute.  The limitations period applicable to international arbitral awards is thus

the natural analogue for actions under 22 U.S.C. § 1650a, and accordingly the three-year statute

of limitations as codified in 9 U.S.C. § 207 should control.

Titan does not and cannot dispute that this federal interest in uniformity underlies Section

1650a.  Titan argues only that those uniformity concerns are not dispositive or are not implicated

here because ICSID award enforcement actions predominantly are filed in this District.  Pet. Br.

at 21-23 (citing 28 U.S.C. § 1391(f)).[3]  That is incorrect.  Contrary to Titan's assertion, this

Court is *not* the only proper venue for enforcement of ICSID awards.  For example, where an

ICSID arbitration is held in any U.S. state, venue in that state would be proper under 28 U.S.C.

§ 1391(f)(1) because the relevant "events or omissions" giving rise to the claim in the

enforcement action would be deemed to have occurred in that forum.  *See Gater Assets Ltd. v.*

*AO Gazsnabtranzit*, 413 F. Supp. 3d 304, 328 (S.D.N.Y. 2019) (New York was proper venue,

because location of "original default judgement can serve as the 'substantial part of the events'

under § 1391(f)(1) to retain venue in a subsequent motion to renew"), *aff'd in part, vacated in*

*part on other grounds, remanded sub nom. Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42 (2d

Cir. 2021); *see also Flight Options, LLC v. Int'l Bhd. of Teamsters, Airline Div.*, 315 F. Supp. 3d

_____

[3] Since the federal interest in uniformity does not apply in "federal actions to enforce a state judgment," it is unsurprising that "federal courts uniformly borrow state statutes of limitations in such actions."  *See* Pet. Br. at 9, 9 n.2 (collecting cases).  Relatedly, Titan misleadingly quotes *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 489 (1980).  Pet. Br. at 23 (misquoting that "'[t]he need for uniformity … has not been held to warrant the displacement of state statutes' where, as here, 'Congress has provided direction' to the contrary").  In reality, the Supreme Court ruled that "the need for uniformity, while paramount under some federal statutory schemes, has not been held to warrant the displacement of state statutes of limitations for *civil rights actions*" and that "Congress has provided direction" "in the areas to which § 1988 is applicable."  *Tomanio*, 446 U.S. at 489 (emphasis added).  Here, Congress has not "indicat[ed] that state law" should apply to ICSID awards.  *Id.*

4

318, 319 (D.D.C. 2018) (private commercial arbitration in D.C. created sufficient "substantial contacts" for finding of proper venue for motion to vacate arbitral award).

ICSID claims may also be brought against foreign state agencies or instrumentalities.  *See* ICSID Convention art. 25(1)-(3) ("The jurisdiction of the Centre [ICSID] shall extend to any legal dispute arising directly out of an investment, between a Contracting State (or any constituent subdivision or agency of a Contracting State designated to the Centre by that State)," and "[c]onsent by a constituent subdivision or agency of a Contracting State shall require the approval of that State unless that State notifies the Centre that no such approval is required."); 28 U.S.C. § 1391(f)(3); *see also OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*, No. 19-CV-2619 (APM), 2020 WL 6342886 (D.D.C. Oct. 29, 2020) (venue rules for foreign state and foreign state instrumentalities not coextensive).[4]

Moreover, as Titan acknowledges, Pet. Br. at 22, improper venue is a defense that, if not timely pursued, is waived by a sovereign defendant.  *See Sisso v. Islamic Repub. of Iran*, 448 F. Supp. 2d 76, 82 n.8 (D.D.C. 2006) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it.") (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)); *see, e.g.*, *Sistem Muhendislik Insaat Sanayi Ve*

---

[4] *See, e.g.*, *Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1177 (C.D. Cal. 2006) (venue was proper in the Northern District of California where Spain's instrumentality did business, in satisfaction of Section 1391(f)(3)), *aff'd in part, rev'd in part,* 580 F.3d 1048 (9th Cir. 2009), *on reh'g en banc,* 616 F.3d 1019 (9th Cir. 2010), *and aff'd in part, appeal dismissed in part,* 616 F.3d 1019 (9th Cir. 2010); *Altmann v. Repub. of Austria*, 142 F. Supp. 2d 1187, 1215 (C.D. Cal. 2001) (venue proper under Section 1391(f)(3) where the instrumentality-defendant does business in the venue), *aff'd and remanded,* 317 F.3d 954 (9th Cir. 2002), *opinion amended on denial of reh'g,* 327 F.3d 1246 (9th Cir. 2003), *and aff'd on other grounds,* 541 U.S. 677 (2004); *Saudi Basic Indus. Corp. v. Exxonmobil Corp.*, 194 F. Supp. 2d 378, 410-11 (D.N.J. 2002) (venue was proper in New Jersey because the defendant, a Saudi government-owned instrumentality, was "doing business" in New Jersey), *order vacated in part*, 364 F.3d 102 (3d Cir. 2004), *rev'd and remanded*, 544 U.S. 280 (2005).

*Ticaret, A.S. v. Kyrgyz Republic*, 741 F. App'x 832 (2d Cir. 2018) (venue waived); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004) (same); *Blue Ridge Invs., LLC. v. Repub. of Arg.,* 902 F. Supp. 2d 367 (S.D.N.Y. 2012) (same), *aff'd sub nom. Blue Ridge Invs., L.L.C. v. Repub. of Arg.*, 735 F.3d 72 (2d Cir. 2013); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009) (same), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  Accordingly, relying on the venue rules and the case-specific litigation strategy of foreign states is an unreliable means of achieving the federal interest in uniformity.  A singular, nationwide federal limitations period applicable to a cause of action arising under a treaty of the United States and having no particular relationship to any state or territory is far more effective to promote uniformity and treating comparably all foreign states and their agencies or instrumentalities subject to ICSID awards.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987) ("The multistate nature of RICO indicates the desirability of a uniform federal statute of limitations," as opposed to "the typical § 1983 suit, in which there need not be any nexus to interstate commerce, and which most commonly involves a dispute wholly within one State.").  ICSID arbitral disputes, like RICO claims, are typically not centered in a single state, and thus a uniform federal limitations period should control.

Finally, the FSIA venue rules adopted in 1976 were not in the contemplation of Congress in 1967 when it adopted the ICSID Convention statute.  At that time, there was no specific venue rule for where in the United States foreign states may be sued.  Instead, prior to the FSIA venue rules, the venue analysis tracked jurisdiction.  *Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Com., Purchase Directorate*, 360 F.2d 103, 106 (2d Cir. 1966) ("[I]n an action against a sovereign just as in any other suit, jurisdiction must be acquired either by service of process, or by the defendant's appearance in court, or in rem by seizure and control of property.

Only after such jurisdiction is acquired, does the sovereign immunity defense properly come into consideration. Instead of being a 'jurisdictional' matter in the same sense as acquiring jurisdiction over a person or property, sovereign immunity presents a ground for relinquishing the jurisdiction previously acquired.").[5]  So Congress could hardly have been relying on the yet-to-be-enacted FSIA venue rules to achieve the uniformity it plainly was seeking a decade earlier with respect to ICSID award enforcement proceedings.

Titan's remaining contentions are also unavailing.

*First*, Titan argues that 9 U.S.C. § 207 cannot be borrowed in this case because 22 U.S.C. § 1650a(a) states that the "Federal Arbitration Act ["FAA"] shall not apply to enforcement of awards rendered pursuant to the convention."  *See* Pet. Br. at 14.  As previously explained, Rep. Br. at 4-6, 22 U.S.C. § 1650a was enacted before the New York Convention obligations were codified in Chapter 2 of the FAA.  At that time, the FAA consisted of provisions designed to apply to domestic, not foreign, arbitral awards, *see generally* 9 U.S.C. § 1 *et seq.*, and the exclusion of such provisions within that context makes perfect sense.  In fact, in enacting Chapter 2 of the FAA concerning international arbitration, Congress explicitly rejected the idea that many of the provisions previously codified in Chapter 1 of the FAA–including the one-year statute of limitations–would be appropriate for the enforcement of foreign arbitral awards.  *See*, *e.g.*, Kearney Statement at 8 (Ex. D, Decl. of Rathna J. Ramamurthi) (Jan. 14, 2022, ECF No. 12-5) (stating the one-year statute of limitations contained within the FAA for seeking

---

[5] *See also Nat'l Am. Corp. v. Fed. Repub. of Nigeria*, 448 F. Supp. 622, 635 (S.D.N.Y. 1978), *aff'd*, 597 F.2d 314 (2d Cir. 1979) ("[P]rior to the passage of the [FSIA], litigants usually chose a quasi-in-rem attachment as the means of asserting jurisdiction over a foreign state," which is not specific for sovereigns); *see also Rovin Sales Co. v. Socialist Repub. of Rom.*, 403 F. Supp. 1298, 1302 (N.D. Ill. 1975) (conducting long-arm jurisdictional analysis for sovereign defendant based on Romania's "transaction of business and . . . commission of tortious acts").

enforcement of domestic arbitral awards "was much too short" for the enforcement of international arbitral awards, and "the consensus was that 3 years is a reasonable period").

*Second*, Titan relies on the statement in Section 1650a(a) that an ICSID "award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," to contend that any limitations period applicable to arbitral awards is not appropriately adopted here. Pet. Br. at 8-9. But Titan ignores that an ICSID arbitral award, just like an international commercial award, is not enforceable in this country until it is converted into a court judgment. *Schlumberger Tech. Corp. v. United States*, 195 F.3d 216, 220 (5th Cir. 1999) (award holder unable to collect because private "award has no legal effect without the stamp of judicial approval"). Moreover, if such a judgment is not timely sought, that award is "null and void" for enforcement purposes in the United States. *Flatow v. Islamic Repub. of Iran,* 76 F. Supp. 2d 28, 29 (D.D.C. 1999) (denying attachment of private arbitral award, where limitations period had run, resulting in an "expired, unenforceable award"). Here, Titan is *seeking* a judgment because it does not already hold an enforceable instrument. *E.g.*, Pet. ¶ 37; *accord* Pet. Br. at 8 (conceding that enforcement requires "convert[ing the] award into an enforceable judgment") (citation omitted). Accordingly, the federal limitations period for confirmation of an arbitral award provides a closer analogue than a statute of limitations for local enforcement of a judgment that has already been rendered by some court and is already enforceable in another jurisdiction within the United States. Nor does a federal court judgment on an ICSID arbitral award give its holder any greater rights or entail any broader sovereign immunity exceptions than a judgment on any other arbitral award against a foreign sovereign. *See* ICSID Convention art. 55 ("Nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to immunity of that State or of

any foreign State from execution."); 28 U.S.C. §§ 1609, 1610.

Moreover, the statutory language affording an ICSID award "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," does not identify the relevant limitations period or speak at all to either the questions of procedure applicable to this type of proceeding or even the legal standard applicable to the Court's determination whether to enforce the ICSID award.  22 U.S.C. § 1650a(a).  In *Mobil Cerro Negro*, the Second Circuit held that ICSID award enforcement actions are plenary suits with the foreign state defendant being served with process and subject to the venue rules of any other action against a foreign state.  863 F.3d at 120, 124.

*Third*, the state statute of limitations Titan advocates for, found in D.C. Code § 15-101, simply does not apply to the ICSID awards as Congress directed it be treated under Section 1650a(a).  D.C. Code § 15-101 establishes that a money judgment of the D.C. Superior Court or of the United States District Court for the District of Columba is "enforceable, by execution issued thereon, for the period of twelve years only from the date when an execution might first be issued thereon, or from the date of the last order of revival thereof," after which period "the judgment or decree shall cease to have any operation or effect."  D.C. Code § 15-101(a)-(b). This provision is inapplicable by the plain terms of Section 1650a, which require this Court to treat the ICSID award not as a judgment of the D.C. Superior Court, but as a judgment of another state ("one of the several States"), as the doctrine of full faith and credit applies by its terms only to the judgments of another jurisdiction and not to one's own judgment.  Congress could have said in Section 1650a that an ICSID award is to be treated "as a final judgment of a court of general jurisdiction of" "the District of Columbia," or of "the federal district where enforcement is sought."  But it did not and instead treats an ICSID award as "foreign" to the jurisdiction

where enforcement is sought.  Accordingly, D.C. Code § 15-101's twelve-year period for enforcing in-state D.C. judgments is affirmatively inapplicable to the out-of-state treatment Congress directed be afforded to ICSID awards, based on the plain text of the two statutes.

Nor can Titan rely on the District of Columbia's limitations period within which to commence a plenary action on a sister state money judgment set out in D.C. Code § 12-307.[6] That section expressly adopts as the D.C. time bar the limitations period of the State, territory, commonwealth, or possession of the United States that issued the judgment for enforcing such judgment.  Accordingly, the District of Columbia has no limitations period of its own for this type of action; it is entirely derivative of whichever one of the more than fifty U.S. States, territories, commonwealths, or possessions rendered the judgment.  However, as Titan acknowledges, because ICSID awards are "rendered by an ICSID tribunal, not any 'State, territory, commonwealth,' or 'foreign country,' it is undisputed that 'there is no rendering state's limitations period to which to refer.'"  Pet. Br. at 10.

Indeed, both D.C. Code §§ 15-101 and 12-307 were adopted in 1963, before 22 U.S.C. § 1650a was enacted, meaning that if Congress anticipated enforcement proceedings with respect to ICSID awards taking place in this Court, there was no available or analogous state law limitations period Congress could have expected this Court to borrow.  The combination of inapposite state law choices–based on their geographic misalignment, D.C. Code § 15-101, and their inapplicable look-through to a rendering state, D.C. Code § 12-307–and interest in federal

---

[6] "An action upon a judgment or decree rendered in a State, territory, commonwealth or possession of the United States or in a foreign country is barred if by the laws of that jurisdiction, the action would there be barred and the judgment or decree would be incapable of being otherwise enforced there."  D.C. Code § 12-307.

uniformity militate strongly in favor of borrowing the federal three-year limitations period in 9 U.S.C. § 207.

The overarching point in Congress's choice of words in 22 U.S.C. § 1650a is not to weigh in on the most appropriate analogue from which to borrow a statute of limitations, but rather to make clear what type of review federal courts were to give to ICSID awards in deciding whether to enforce them.[7]  As Titan's own authorities teach, the "full faith and credit" language means that ICSID awards are not to be subject to substantive challenges on the merits.  *See Tidewater Inv. SRL v. Bolivarian Repub. of Venez.*, No. 17-1457 (TJK), 2018 WL 6605633, at *7 (D.D.C. Dec. 17, 2018) (cited in Pet. Br. at 16) (granting default judgment where plaintiff "demonstrated to the Court's satisfaction that it is the proper creditor to a valid ICSID award against Venezuela"); *Mobil Cerro Negro*, 863 F.3d at 102, 118 (cited in Pet. Br. at 16) (award debtor "[is] not . . . permitted to make *substantive challenges*" regarding the "ICSID award's *merits*, its *compliance with international law*, or the ICSID tribunal's *jurisdiction* to render the award") (emphases added); *see also* ICSID Convention, Arts. 53(1), 54(1) (ICSID awards are treated as "binding," "final judgment[s]" that are not "subject to any appeal or to any other remedy except those provided for in th[e] Convention.").[8]

---

[7] Notably, in Section 1650a, Congress also did not provide, as it could have, that an ICSID award shall be treated as if the award were a final judgment of a federal district court other than where enforcement is sought, and thus be subject to registration in this Court pursuant to 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district. . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.").  It is well-settled that, by its plain terms, Section 1963 does not permit the registration of a judgment of a state court, as Section 1650a directs ICSID awards be deemed.

[8] *Watkins v. Conway*, 385 U.S. 188, 189 (1966) (cited in Pet. Br. at 14-15) held that application of a different limitations period to enforcement of an out-of-state judgment was *not* discriminatory and did not violate the full faith and credit clause.  And *Micula v. Gov't of Rom.*, 104 F. Supp. 3d 42, 49 (D.D.C. 2015) (cited in Pet. Br. at 6, 8) held that an ICSID award could

Titan relies heavily on an out-of-circuit ruling in *Blue Ridge*, 902 F. Supp. 2d 367, where in considering New York state law alternatives the court chose to borrow New York's limitations period for enforcement of judgments. *See* Pet. Br. at 13-14.[9]  The court in *Blue Ridge* stated that a federal statute of limitations should apply where "the federal policies at stake and the practicalities of the litigation render the federal limitation a significantly more appropriate vehicle for interstitial lawmaking," but then did not engage in an analysis of *any* federal interests (*i.e.*, uniformity is not mentioned once in the decision).  902 F. Supp. 2d at 386 (citing *Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 393-94 (2d Cir. 2001)).  In any event, New York law at least offered a theoretically workable limitations period for the task at hand.  Unlike D.C. law which derives the deadline for enforcing sister state judgments from the statute of limitations of the state that issued the judgment, the New York statute of limitations for judgment enforcement provides a fixed period for enforcement of sister state judgments in New York court.  *Compare Blue Ridge*, 902 F. Supp. 2d at 388 (explaining that "New York courts have held that out-of-state money judgments are subject to the [fixed] statute of limitations in CPLR § 211(b)") (citing *Schoonheim v. Epstein*, 123 A.D.2d 549, 549 (1st Dep't 1986)), *and* N.Y. C.P.L.R. § 5402(b) (New York courts "shall treat the foreign judgment in the same manner as a judgment of the supreme court of this state"), *with* D.C. Code § 12-307.  This is a critical difference—in Titan's own words, D.C. Code § 12-307 would be the analogue to the provision applied in *Blue Ridge*, and application of D.C. Code § 12-307 is "*impossible*" for ICSID awards so "not a viable option"

---

not be confirmed on an *ex parte* basis and instead a plenary action and notice to the sovereign were required.  Neither case has any application here.

[9] Titan acknowledges that no Court in this circuit has "confront[ed] the issue raised . . . here." Pet. Br. at 1.

here.  Pet. Br. at 10 (emphasis added).  The *Blue Ridge* decision thus does not answer the question at issue.

    *Fourth*, Titan asserts that a three-year limitations period is too short because in some number of ICSID cases there are annulment proceedings of above-average length that last for over three years and which may result in award of additional costs.  Pet. Br. at 19-20.  An award holder could initiate an enforcement action and seek a stay as needed in the event that annulment proceedings are brought or take longer than anticipated.  *See, e.g.*, *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. CV 20-817 (JDB), 2021 WL 2665406 (D.D.C. June 29, 2021) (granting defendant's motion to stay pending decision of the annulment committee); *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, No. 1:19-CV-03783 (CJN), 2021 WL 1226714 (D.D.C. Mar. 31, 2021) (same); *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34 (D.D.C. 2019) (same).  Here, the annulment proceedings ended one year and ten months after the award was rendered and more than *two years* before Titan filed its claim.

    As to the possibility that award holders may first seek to enforce their awards in other jurisdictions, Pet. Br. at 20, as Titan acknowledges, the FAA's three-year limitations period was created specifically "to allow time for . . . initial enforcement efforts outside the United States," *id.* at 21.  Titan claims this is insufficient still because of "unique delays" in matters involving sovereigns, *id.*, but has no explanation for why an action could not be initiated before the end of the limitations period.  If anything, borrowing a uniform federal limitations period would increase predictability for award holders as they make strategic choices.  Again, Titan makes no showing that this barrier of a three-year limitations period prevented it from timely filing here.

    Titan also incorrectly asserts that a statute of limitations period shorter than the twelve-years pursuant to D.C. Code § 15-101 for in-state judgments is unnecessary because the "central

purpose" of a statute of limitations is to prevent memories from fading and evidence being lost

Pet. Br. at 17 (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)), concerns that are not relevant to

enforcement of an ICSID award.  However, finality—more than concern for proof issues—is

also a central goal of a statute of limitations, as are fairness and repose.  *Am. Pipe & Constr. Co.*

*v. Utah*, 414 U.S. 538, 554 (1974) (describing "policies of ensuring essential fairness to

defendants and of barring a plaintiff who 'has slept on his rights'"; "the right to be free of stale

claims in time comes to prevail over the right to prosecute them"); *see also Blanco v. Am. Tel. &*

*Tel. Co.*, 689 N.E.2d 506, 513 (N.Y. 1997) ("In examining the policies underlying Statutes of

Limitation, this Court has emphasized both a defendant's interest in repose [and issues of

proof].").

Indeed, the sufficiency of a three-year limitations period is demonstrated by the fact that

in all cases where this Court has enforced an outstanding monetary award issued by an ICSID

tribunal the action was timely initiated within a three-year limitations period.[10]

---

[10] Titan cites certain cases to dispute this, but all are distinguishable.  *See* Pet. Br. at 14 n.4.  In
*TECO Guat. Holdings, LLC v. Repub. of Guat.*, 414 F. Supp. 3d 94 (D.D.C. 2019), an original
award was issued in December 2013 but the annulment award being enforced–which created
separate monetary obligations on a new claim for loss of value–was issued in April 2016, nine
months before the action was filed.  In *Micula*, the initial enforcement petition was filed in April
2014, five months after the ICSID award was issued, and the November 2017 filing followed a
Second Circuit ruling on venue.  *See Micula v. Gov't of Rom.*, 404 F. Supp. 3d 265 (D.D.C.
2019), *aff'd,* 805 F. App'x 1 (D.C. Cir. 2020) (discussing procedural history in New York,
*Micula v. Gov't of Rom.*, No. 15 MISC. 107, 2015 WL 4643180 (S.D.N.Y. Aug. 5, 2015), *rev'd
Micula v. Gov't of Rom.*, 714 Fed. App'x 18, 21-22 (2d Cir. 2017)).  *Miminco* did not involve a
standard monetary award but rather a settlement agreement signed by the arbitrators where some
payments were made over the years, and finally petitioners filed suit when they were unable to
collect.  *Miminco, LLC v. Dem. Rep. Congo*, 79 F. Supp. 3d 213 (D.D.C. 2015).  *See also Duke
Energy Int'l Peru Invs. No. 1 LTD. v. Repub. of Peru*, 904 F. Supp. 2d 131 (D.D.C. 2012)
(defendant paid the entire award, and the suit—brought three years and 19 days after the award
was issued—related to disagreement on calculation of interest).

14

### B.  If The Court Looks To State Law Then D.C. Code § 16-4425 – Applicable To The Enforcement of Arbitral Awards – Is More Appropriately Applied Here

Titan also misreads the text of Section 1650a(a) in rejecting D.C.'s limitations period governing the judicial enforcement of arbitral awards as categorically inapplicable to ICSID awards.  Pet. Br. at 18 n.6.  An ICSID award is still an arbitral award and the time limits for converting other types of arbitral awards into a judicially enforceable judgment are necessarily analogous to ICSID awards.  Accordingly, even if the Court were inclined to look to state law for the limitations period to govern this action, the most closely analogous D.C. statute is the D.C. Arbitration Act.  D.C. Code § 16-4425.  By operation of D.C. Code § 12-301(8), petitioners have three years to apply to a court to convert an arbitration award into an enforceable judgment and consequently borrowing that limitations period would also render this action untimely.

### CONCLUSION

For the foregoing reasons, the Republic's Motion to Dismiss should be granted.

Dated: New York, New York
February 4, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Carmine D. Boccuzzi, Jr. (D.C. Cir. NY0335)
One Liberty Plaza, New York, New York 10006
T: 212-225-2000; cboccuzzi@cgsh.com

Rathna J. Ramamurthi (D.C. Cir. NY0337)
2112 Pennsylvania Avenue NW Washington, DC 20037
T: 202-974-1515; rramamurthi@cgsh.com

*Attorneys for the Republic of Argentina*

15