UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TITAN CONSORTIUM 1, LLC, <br><br> Petitioner, <br><br> v. <br><br> ARGENTINE REPUBLIC, <br><br> Respondent. | Case No. 21-cv-2250 (JMC) |

**MEMORANDUM OPINION**

Petitioner Titan Consortium 1, LLC sues Respondent Argentine Republic under 22 U.S.C. § 1650a for enforcement of an arbitration award issued by an International Centre for Settlement of Investment Disputes Tribunal. ECF 1.[1] Argentina moves to dismiss the lawsuit as time-barred, but Section 1650a's lack of an express limitations period complicates matters somewhat. Argentina argues that the applicable limitations period is three years—as borrowed from either the Federal or D.C. Arbitration Act—rendering Titan's claim untimely. ECF 12. Titan opposes, arguing that the applicable limitations period is twelve years, consistent with D.C. Code § 15-101, which governs the enforcement of judgments rendered by courts in the District of Columbia. ECF 13. Upon review of the small buffet of viable options, the Court concludes that the twelve-year statute of limitations of D.C. Code § 15-101 controls and therefore Titan's lawsuit is timely. As such, the Court **DENIES** Argentina's motion to dismiss.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

I. BACKGROUND

The International Centre for Settlement of Investment Disputes (ICSID) is a World Bank-affiliated arbitral institution established by the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention"), an international treaty that establishes procedures for resolving investment disputes involving member states. Under the ICSID Convention, member states may request arbitration, and a tribunal will convene to adjudicate the request and determine whether to render an award. ICSID Convention art. 36, 42, 48. Article 54 of the ICSID Convention addresses enforcement of awards and is codified at 22 U.S.C. § 1650a, which endows federal courts with exclusive jurisdiction over such enforcement actions and mandates that ICSID awards "be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." Perhaps unsurprisingly, the arbitration-centered ICSID Convention is similar to the also-arbitration-centered New York Convention, which is codified in Chapter 2 of the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 201–08. But regardless of the common features these laws may share, when it comes "to enforcement of awards rendered pursuant to the [ICSID] convention," Congress expressly stated that "[t]he Federal Arbitration Act . . . shall not apply." 22 U.S.C. § 1650a(a).

An initial award does not necessarily end the ICSID arbitral process. After an award is rendered, either party may request annulment of that award. ICSID Convention art. 52(1). Once a party files for annulment, enforcement of the award may be stayed until the annulment proceeding concludes. ICSID Convention art. 52(5). And if the award is annulled, either party may request that the dispute be submitted to a new tribunal. ICSID Convention art. 52(6). On average, these annulment proceedings last about two years, but they sometimes go on for much longer. ICSID, *Updated Background Paper on Annulment for the Administrative Council of ICSID* ¶ 61 (May 5,

2016), icsid.worldbank.org/sites/default/files/Background%20Paper%20on%20Annulment%20April%202016%20ENG.pdf; *see, e.g.*, *Highbury Int'l AVV & Ramstein Trading Inc. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/11/1 (more than five years between application for annulment and decision on annulment).

Turning to the facts of the case at hand (as alleged in the complaint), the original arbitration claimants are Spanish companies that invested in Argentina's airline industry in 2001. ECF 1 ¶ 8. In 2008, a majority-owned subsidiary of the original claimants entered into a binding contract with the Government of Argentina, whereby Argentina agreed to purchase the subsidiary's majority shares in two airlines. *Id.* But instead of moving forward with the sale, Argentina opted to "acquire[] the airlines by way of expropriation without notice to [the subsidiary] or Claimants." *Id.* In response, on December 11, 2008, the original claimants filed a request for arbitration with ICSID. *Id.* ¶ 12. Almost nine years later, on July 21, 2017, the ICSID Tribunal issued an award in favor of claimants, ordering Argentina to pay more than $320 million in compensation and nearly $3.5 million in legal fees, all with interest until paid in full. *Id.* ¶¶ 15, 19. On November 17, 2017, Argentina filed an application for annulment of the award, which was denied on May 29, 2019. *Id.* ¶¶ 20, 23. With the denial, Argentina was ordered to pay an additional $1,017,512 in representation costs and expenses. *Id.* ¶ 23. Then, in November of 2020, the original claimants assigned their interests, rights, and proceeds tied to the award to Titan. *Id.* ¶ 24.

Titan filed the present enforcement action in its capacity as assignee of the multimillion-dollar ICSID award on August 24, 2021. ECF 1. Argentina now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Titan's action is time-barred, ECF 12, Titan opposes, ECF 13, and this Court is now prepared to rule on the motion.

## II.    ANALYSIS

So long as "the facts that give rise to the defense are clear from the face of the complaint," a Rule 12(b)(6) motion may raise affirmative defenses, including untimeliness. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). In this case, the relevant facts (i.e., the date of the ICSID award and the date Titan brought this action) are clear from the complaint. However, the law under which this action was brought, 22 U.S.C. § 1650a, does not specify a statute of limitations, and the Parties dispute which statute of limitations should apply. To resolve this dispute, and in the absence of explicit guidance from Congress, the Court begins with a strong presumption in favor of borrowing a statute of limitations from state law (or, in this case, District of Columbia law). *See Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989). Thus, the Court must first identify "the state statute most closely analogous to the federal Act in need." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995). Often, the analysis stops there.

In some circumstances, federal law may step in as a "secondary lender" for statute of limitations purposes, but this is a "narrow exception" that applies only when the state limitations period would "frustrate or interfere with the implementation of national policies" or "be at odds with the purpose or operation of federal substantive law." *Id.* That is, a court may "decline to follow a state limitations period only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, *and* when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* at 35 (emphasis added). In other words, without more, it is often "simply beside the point that even a perfectly good federal analogue exists." *Id.* at 37.

The Court therefore starts its analysis in this case by reviewing D.C. law to identify the closest analog to 22 U.S.C. § 1650a and assessing whether that analog frustrates federal interests

4

or the practicalities of litigation. Upon review, D.C. Code § 15-101 is the best option. This law sets a twelve-year limitations period for the enforcement of any "final judgment or final decree for the payment of money rendered in the . . . Superior Court of the District of Columbia." D.C. Code § 15-101(a). Given the mandate of Section 1650a to treat an ICSID award "as if [it] were a final judgment of a court of general jurisdiction of one of the several States," a law governing the enforcement of money judgments from D.C. Superior Court is a sensible choice.

There is also no conflict between D.C. Code § 15-101 and the federal interests implicated by Section 1650a. Argentina disagrees, arguing that "22 U.S.C. § 1650a seeks the *uniformity* of enforcement proceedings throughout all federal courts in the United States" and so "the fact that state law varies" when it comes to limitations periods is reason enough to reject state law. ECF 12 at 8–10. But potential lack of uniformity does not compel departing from the well-settled practice of borrowing state limitations periods. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 742 (D.C. Cir. 1995). Indeed, lack of uniformity is "the result *any* time a federal court borrows a local statute of limitations, yet the norm is [still] to look to state law." *Id.* As such, concerns of potential disuniformity in ICSID enforcement proceedings are simply insufficient to rebut the presumption in favor of borrowing limitations periods from state law and, in this case, D.C. Code § 15-101.

Nor is there any tension between D.C. Code § 15-101 and the practicalities of ICSID litigation. If anything, given the operation of ICSID annulment proceedings, the somewhat lengthy limitations period of D.C. Code § 15-101 promotes efficiency. Annulment proceedings are commonplace, often multiyear endeavors in the ICSID arbitral process. *See* Johannes Koepp, et al., *Empirical Study: Annulment in ICSID Arbitration* 5 (2021), www.biicl.org/documents/10899 _annulment-in-icsid-arbitration190821.pdf (noting that "over 40% of all ICSID awards" either "have been or are currently the subject of annulment proceedings"). In some cases, they may

extend the ICSID process upwards of six years. *E.g.*, *Highbury Int'l AVV*, ICSID Case No. ARB/11/1 (six years between award and annulment decision). And in all cases they have the potential to alter an award even if annulment is ultimately denied. The present action is a case in point: at the end of roughly two years between initial award and annulment denial, the award was increased by an additional *$1 million*. ECF 1 ¶ 23. In this context, it seems unlikely that Congress would have wanted ICSID award holders to ignore imminent or pending annulment proceedings and rush to federal court to enforce an award that might be incomplete or invalid. *Cf.* ICSID Convention art. 52(5) (authorizing stay of award enforcement pending annulment proceedings).

Argentina's arguments advocating for other, shorter statutes of limitations are unpersuasive. Argentina first argues that FAA Chapter 2 (codifying the New York Convention) supplies the appropriate limitations period. *See* ECF 12 at 8 (citing 9 U.S.C. § 207). Yet even if FAA Chapter 2, which provides a three-year window to confirm foreign commercial arbitration awards, were a closer analog than D.C. Code § 15-101, that alone would not justify supplanting D.C. law. Again, when Congress fails to provide an express limitations period, courts are required to apply a strong presumption favoring the limitations period drawn from "the state statute most closely analogous to the federal Act in need." *N. Star Steel*, 515 U.S. at 34. As such, "it is simply beside the point that even a perfectly good federal analogue exists" unless the state statute in question somehow frustrates federal policies or interferes with the practicalities of litigation, *id.* at 35, 37, but Argentina can make neither showing regarding D.C. Code § 15-101.

Even assuming for the sake of argument that the FAA were a closer analog, Argentina still cannot justify supplanting D.C. Code § 15-101. First, as far as federal interests go, Argentina's principal argument is that applying state law creates a lack of uniformity. ECF 12 at 8–11. To be sure, applying the same limitations period in all ICSID litigation would promote uniformity. But,

6

once again, when a limitations period is needed, federal law acts only as a "secondary lender," while state law is the presumptive one. *N. Star Steel*, 515 U.S. at 34. In other words, and as this Court and the Supreme Court have already explained, lack of uniformity is "just the cost[] of the rule itself." *Id.* at 36. Second, when it comes to the practicalities of ICSID litigation, applying the FAA does not promote efficiency. In the ICSID system, where post-award annulment proceedings can postpone the effective finality of awards for several years, a three-year limitations period might force many parties to waste time in parallel proceedings (possibly across multiple countries, no less) just for the sake of claim preservation.[2] What's more, even after considering Argentina's take on the (purported) difference between the "application" of a law versus the "borrow[ing]" of its limitations period, *see* ECF 12 at 10, the unequivocal mandate of Section 1650a that "the [FAA] shall not apply to enforcement of [ICSID] awards" deals yet another blow to Argentina's position. At a minimum, the Court is not persuaded that the FAA is a "significantly more appropriate vehicle for interstitial lawmaking," *Reed*, 488 U.S. at 324, such that the Court must apply it over D.C. Code § 15-101.

In any case, it is not all that clear that FAA Chapter 2—nor Argentina's preferred D.C. law, the D.C. Arbitration Act—is in fact a closer analog to Section 1650a than D.C. Code § 15-101. While the FAA and the D.C. Arbitration Act create procedures for courts to *confirm* awards, the plain text of Section 1650a compels courts to *enforce* awards, and to do so as if they were state court judgments. *See Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 49–50 (D.D.C. 2015) (quoting 22 U.S.C. § 1650a). Both Arbitration Acts also provide various "grounds for refusal or

---

[2] Notably, in what appears to be the only other district court decision ruling on this exact ICSID issue, a judge in the Southern District of New York did not hesitate to apply a lengthy state law limitations period and deny a motion to dismiss filed by none other than Argentina. *See Blue Ridge Invs. v. Republic of Argentina*, 902 F. Supp. 2d 367, 388 & n.17 (S.D.N.Y. 2012) (referring to "absurd results" that would follow from applying a one-year statute of limitations "in the context of an ICSID award").

7

deferral of recognition or enforcement of [an] award" that courts (if requested) must consider, 9 U.S.C. §§ 10, 207; *accord.* D.C. Code § 16-4422, but Section 1650a does not allow for such merits-based challenges to ICSID awards, leaving the courts with a largely "perfunctory role" when it comes to enforcement, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-cv-1457, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 120–21 (2d Cir. 2017) ("Congress intended to make [the FAA's] grounds of attack unavailable to ICSID award-debtors in federal court enforcement proceedings."). All in all, Section 1650a's distinct wording, exclusion of the FAA's unique procedures, and instruction that ICSID awards "be given the same full faith and credit" as state court judgments distinguish Section 1650a from its "Arbitration Act" counterparts. In setting a limitations period for the "enforceab[ility]" of "final judgment[s]" rendered in D.C. Superior Court, D.C. Code § 15-101 more closely mirrors the directive of Section 1650a than Argentina's proposed candidates.

In its last attempt to sweep D.C. Code § 15-101 away, Argentina argues that D.C. Code § 12-307, which governs the enforceability of "foreign judgments" (including judgments rendered by any court of the several states), is a closer analog than D.C. Code § 15-101 but is unworkable for purposes of ICSID litigation.[3] ECF 12 at 12–13. On both fronts, Argentina is correct. But the Court fails to understand why the unworkability of one provision of the D.C. Code prohibits this Court from applying the closest *workable* D.C. analog, which is found in D.C. Code § 15-101. Regardless of potential "geographic misalignment" (as Argentina calls it), ECF 15 at 16, and for all the reasons already stated, D.C. Code § 15-101 is the "most closely analogous" and workable

---

[3] The D.C. Court of Appeals has construed Section 12-307 as follows: "in suits for enforcement of foreign judgments the statute of limitations of the jurisdiction where rendered is controlling." *Varone v. Varone*, 296 A.2d 174, 178 (D.C. 1972). For ICSID awards, there is no rendering jurisdiction's limitations period to refer to, which makes application of Section 12-307's "limitations period" impossible in this context.

8

"state" law, and Argentina has failed to rebut the strong presumption that favors applying its limitations period in this context, *see Reed*, 488 U.S. at 323.

\* \* \*

Under the twelve-year limitations period in D.C. Code § 15-101, this suit is timely. The ICSID award in question was rendered on July 21, 2017, and Titan filed this enforcement action on August 24, 2021. As such, Argentina's motion to dismiss, ECF 12, is **DENIED**.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: August 19, 2024