IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Titan Consortium 1, LLC, | |
| *Petitioner*, | |
| v. | **Civil Action No.** 1:21-cv-02250 (JMC) |
| The Argentine Republic, | |
| *Respondent*. | |

## <u>Petitioner's Motion for Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(c) and 22 U.S.C. § 1650a, Petitioner Titan Consortium 1, LLC ("Titan"), by and through undersigned counsel, hereby moves for summary judgment against Respondent the Republic of Argentina ("Argentina"). Titan respectfully requests that the Court enter judgment in its favor requiring Argentina to pay: (1) $324,254,807 on the Award (comprising $320,760,000 in compensation and $3,494,807 in costs and fees), plus prejudgment interest, compounded semi-annually at the six-month U.S. Treasury Bill rate; (2) $1,017,512 on the Annulment Decision, plus prejudgment interest at the prime rate; and (3) postjudgment interest on all those amounts at the federal statutory postjudgment interest rate.

Pursuant to Local Civil Rule 7, the grounds for this motion are set forth in the accompanying Memorandum of Law.

Dated: October 4, 2024

Respectfully submitted,

/s/ Matthew D. McGill
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Ankita Ritwik, D.C. Bar #1024801
aritwik@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Titan Consortium 1, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Titan Consortium 1, LLC,

        *Petitioner*,

    v.

The Argentine Republic,

        *Respondent*.

**Civil Action No.** 1:21-cv-02250 (JMC)

**Petitioner's Memorandum of Law in Support of Its Motion for Summary Judgment**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

    I.    Argentina Expropriates Claimants' Investments In Two Argentinian Airlines ............................................................................................................. 3

    II.   Claimants Seek Relief By Invoking Their Rights Under The ICSID Convention ..................................................................................................... 4

    III.  An ICSID Tribunal Awards Claimants More Than $300 Million, And An ICSID Annulment Committee Denies Argentina's Application To Annul The Award ........................................................................................................ 6

    IV.  Titan Acquires All Rights In The Award And Promptly Acts To Enforce It ........ 7

STANDARD OF REVIEW ............................................................................................. 8

ARGUMENT ................................................................................................................... 9

    I.    This Court Has Jurisdiction Under The FSIA To Enforce The Award ................. 9

         A.    This Court Has Jurisdiction Under The Arbitration Exception Because Argentina Agreed To Arbitrate Its Dispute With Claimants ................................................................................................ 10

         B.    This Court Has Jurisdiction Under The Waiver Exception Because Argentina Waived Its Immunity By Signing The ICSID Convention ............................................................................................. 12

         C.    Federal Courts' Jurisdiction Under The FSIA Extends To Enforcement Actions By Assignees Of Arbitral Awards ....................... 14

    II.   Titan Holds All Rights In The Award And Is Entitled To Its Enforcement ........ 16

    III.  The Court Should Enter Judgment In The Full Amount Of The Award And The Fees Awarded By The Annulment Decision, Plus Pre- And Postjudgment Interest ........................................................................................ 17

         A.    The Judgment Should Include Prejudgment Interest On The Award Consistent With The Award's Plain Terms ............................................. 18

**TABLE OF CONTENTS**
*(Continued)*

Page

B.    To Fully Compensate Titan For The Additional Attorneys' Fees
      Awarded By The Annulment Committee, The Court Should Award
      Prejudgment Interest On Those Fees ........................................................ 19

C.    Titan Is Entitled To Postjudgment Interest ............................................... 21

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................9

*Archirodon Constr. (Overseas) Co. Ltd. v. Gen. Co. for Ports of Iraq*,
No. 22-1571, 2024 WL 341066 (D.D.C. Jan. 30, 2024)....................................................20, 21

*Balkan Energy Ltd. v. Republic of Ghana*,
302 F. Supp. 3d 144 (D.D.C. 2018) ................................................................................15

* *Blasket Renewable Invs. v. Kingdom of Spain*,
No. 23-2701, 2024 WL 4298808 (D.D.C. Sept. 26, 2024) .........................................2, 12, 14, 17

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
735 F.3d 72 (2d Cir. 2013)............................................................................................1, 13, 14

*Blue Ridge Invs., LLC v. Republic of Argentina*,
902 F. Supp. 2d 367 (S.D.N.Y. 2012)..............................................................................2, 15

*Byrd v. Corporacion Forestal y Indus. de Olancho S.A.*,
182 F.3d 380 (5th Cir. 1999) ..........................................................................................14

*Cabiri v. Gov't of Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999)...........................................................................................12

*Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*,
888 F.2d 260 (2d Cir. 1989)...........................................................................................21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................................................8

*Chevron Corp. v. Ecuador*,
795 F.3d 200 (D.C. Cir. 2015)........................................................................................10, 12

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
628 F. Supp. 3d 1 (D.D.C. 2022) ....................................................................................13

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*,
932 F. Supp. 2d 153 (D.D.C. 2013) ................................................................................20

*Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria*,
603 F. App'x 1 (D.C. Cir. 2015) .....................................................................................21

*Creighton Ltd. v. Government of State of Qatar*,
181 F.3d 118 (D.C. Cir. 1999) ........................................................................................13

## TABLE OF AUTHORITIES
### *(Continued)*

Page(s)

*Cube Infrastructure Fund SICAV v. Kingdom of Spain*,
No. 20-1708, 2023 WL 2914472 (D.D.C. Mar. 31, 2023) ......................................................9

*Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*,
904 F. Supp. 2d 131 (D.D.C. 2012) .....................................................................................19

*Forman v. Korean Air Lines Co.*,
84 F.3d 446 (D.C. Cir. 1996) ...............................................................................................21

*In re Grant*,
635 F.3d 1227 (D.C. Cir. 2011) ...........................................................................................13

*Gretton Ltd. v. Republic of Uzbekistan*,
No. 18-1755, 2019 WL 3430669 (D.D.C. July 30, 2019) .................................................2, 15

*Hicks v. Miranda*,
422 U.S. 332 (1975) .............................................................................................................13

*Koch Mins. Sarl v. Bolivarian Republic of Venezuela*,
No. 17-2559, 2021 WL 3662938 (D.D.C. Aug. 18, 2021) ....................................................18

*La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*,
533 F.3d 837 (D.C. Cir. 2008) .............................................................................................14

*LLC Komstroy v. Republic of Moldova*,
No. 14-1921, 2019 WL 3997385 (D.D.C. Aug. 23, 2019) ....................................................21

*LLC SPC Stileks v. Republic of Moldova*,
985 F.3d 871 (D.C. Cir. 2021) .........................................................................................19, 20

*Ministry of Def. of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*,
665 F.3d 1091 (9th Cir. 2011) ..............................................................................................20

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017) ...................................................................................................17

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
No. 14-8163, 2015 WL 926011 (S.D.N.Y. Mar. 4, 2015) ...............................................18, 19

* *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024) ......................................................1, 2, 10, 11, 13, 14

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
No. 16-1533, 2019 WL 2185040 (D.D.C. May 21, 2019) .....................................................18

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

*Oldham v. Korean Air Lines Co.*,
  127 F.3d 43 (D.C. Cir. 1997) ............................................................... 19, 21

*Owens v. Republic of Sudan*,
  864 F.3d 751 (D.C. Cir. 2017) ................................................................. 9

*Princz v. Fed. Republic of Germany*,
  26 F.3d 1166 (D.C. Cir. 1994) ................................................................ 12

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
  506 F. Supp. 3d 1 (D.D.C. 2020) ............................................................ 13

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) .............................................................................. 10

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v.*
  *Navimpex Centrala Navala*,
  989 F.2d 572 (2d Cir. 1993) ................................................................... 13

*Stati v. Republic of Kazakhstan*,
  199 F. Supp. 3d 179 (D.D.C. 2016) ........................................................ 13

*Talavera v. Shah*,
  638 F.3d 303 (D.C. Cir. 2011) ................................................................. 8

*Tatneft v. Ukraine*,
  771 F. App'x 9 (D.C. Cir. 2019) ............................................................. 13

*Themis Cap., LLC v. Democratic Republic of Congo*,
  881 F. Supp. 2d 508 (S.D.N.Y. 2012) ..................................................... 15

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
  No. 17-1457, 2018 WL 6605633 (D.D.C. Dec. 17, 2018) .......................... 17

*United States v. Aetna Casualty & Surety Co.*,
  338 U.S. 366 (1949) .............................................................................. 14

\* *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
  87 F.4th 510 (D.C. Cir. 2023) ........................................................ 9, 17, 18

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
  No. 19-46, 2022 WL 17370242 (D.D.C. Aug. 3, 2022) ............................ 18

*West Virginia v. United States*,
  479 U.S. 305 (1987) .............................................................................. 19

## TABLE OF AUTHORITIES
### *(Continued)*

<u>Page(s)</u>

**Statutes**

\* 22 U.S.C. § 1650a ............................................................2, 3, 7, 8, 9, 16, 17, 18, 19

28 U.S.C. § 1330 ...........................................................................................10, 15

28 U.S.C. § 1605 .............................................................................1, 10, 11, 12, 14

28 U.S.C. § 1608 ....................................................................................................15

28 U.S.C. § 1961 ...........................................................................................3, 9, 21

D.C. Code § 15-101 ................................................................................................8

**Treaties**

Argentina-Spain Treaty, art. III ...........................................................................4, 6

Argentina-Spain Treaty, art. IV ...........................................................................4, 6

Argentina-Spain Treaty, art. V .............................................................................4, 6

Argentina-Spain Treaty, art. X ...........................................................................5, 11

ICSID Convention, pmbl. .........................................................................................4

ICSID Convention, art. 41 .......................................................................................4

ICSID Convention, art. 48 .......................................................................................4

ICSID Convention, art. 52 ....................................................................................5, 6

ICSID Convention, art. 53 .............................................................................1, 4, 5, 6

\* ICSID Convention, art. 54 .........................................................................1, 6, 12, 16

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................15

Fed. R. Civ. P. 56 ....................................................................................................8

**Other Authorities**

*Convention on the Settlement of Investment Disputes: Hearing Before the Subcomm. on Int'l Orgs. & Movements of the H. Comm. on Foreign Affairs*, 89th Cong. 41 (1966)...................16

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 25, 2024),
https://icsid.worldbank.org/sites/default/files/ICSID%203/2024%20-%20Aug%2025%20-
%20ICSID%203%20-%20ENG.pdf.........................................................................................4

## INTRODUCTION

Petitioner Titan Consortium 1, LLC ("Titan") holds a more than $300 million arbitral award (the "Award," ECF No. 1-1, Ex. A) against the Republic of Argentina ("Argentina"), resulting from arbitration under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention," ECF No. 1-2). The ICSID Convention is a treaty signed by the United States, Argentina, and most nations of the world that provides a comprehensive framework for resolving investment disputes between its signatory nations and the private investors of other signatory nations through the International Centre for Settlement of Investment Disputes ("ICSID"), under the auspices of the World Bank. Countries that join the Convention are required by the treaty to pay all awards entered against them. But Argentina has not paid the Award here, which Titan's predecessors-in-interest won after Argentina expropriated their investments in two Argentinian airlines. Titan has thus been forced to seek enforcement in nations like the United States where Argentina may hold assets.

Two provisions of the Foreign Sovereign Immunities Act ("FSIA") give federal courts subject-matter jurisdiction to enforce ICSID awards against foreign states—the arbitration exception, 28 U.S.C. § 1605(a)(6), *see NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024); and the waiver exception, 28 U.S.C. § 1605(a)(1), *see Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013). And once jurisdiction is established, the Convention and its implementing legislation in the United States provide for streamlined enforcement procedures against signatory nations. ICSID awards are treated as "binding," "final judgment[s]" that are not "subject to any appeal or to any other remedy except those provided for in th[e] Convention." ICSID Convention, arts. 53(1), 54(1). In the United States, Congress has specified that they are entitled to the same "full faith and credit" as the judgments of a state court, and they are not subject even to the limited defenses to enforcement

1

that ordinarily are available under the Federal Arbitration Act ("FAA"). 22 U.S.C. § 1650a(a). U.S. courts uniformly agree that foreign states have no right to oppose enforcement of an ICSID award by challenging the arbitral tribunal's decisions on either jurisdiction or the merits. Instead, a federal court must enforce an ICSID award expeditiously by converting the award into a money judgment as soon as the foreign state is served and the court's jurisdiction is established.

Argentina nonetheless opposes enforcement of the Award on statute-of-limitations grounds and based on the fact that Claimants assigned their interests in the Award to Titan. But this Court already rejected Argentina's statute-of-limitations defense in denying its motion to dismiss. And Argentina's arguments about Titan's assignment lack merit. Titan validly acquired all rights in the Award in a November 2020 transaction that assigned it all interests Claimants had in the Award, making it the sole holder of any rights in the Award. And it is black-letter law that assignee steps into the shoes of its assignor and is entitled to enforce the rights it has been assigned. The FSIA does nothing to disturb that rule, so courts regularly exercise jurisdiction over suits by assignees to enforce arbitral awards against foreign states. *E.g.*, *NextEra*, 112 F.4th at 1098, 1111; *Blasket Renewable Invs. v. Kingdom of Spain*, No. 23-2701, 2024 WL 4298808, at *3, *6, *14 (D.D.C. Sept. 26, 2024); *Gretton Ltd. v. Republic of Uzbekistan*, No. 18-1755, 2019 WL 3430669, at *4 (D.D.C. July 30, 2019); *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 375 n.7 (S.D.N.Y. 2012), *aff'd*, 735 F.3d 72. Titan's status as an assignee thus poses no barrier to enforcement. Instead, the ICSID Convention's implementing legislation requires this Court to enter judgment for Titan enforcing the Award, as well as the related arbitral decision awarding Titan the attorneys' fees it incurred in defending against Argentina's failed attempt to annul the Award. *See* ECF No. 1-1, Ex. B ("Annulment Decision").

That leaves the amount of pre- and postjudgment interest.  The Award provides that Argentina must pay interest on the amount of the Award and on the costs and fees Claimants incurred in the arbitration proceedings, so the Court's duty to enforce the "pecuniary obligations" of the Award, 22 U.S.C. § 1650a(a), requires that it order Argentina to pay interest at the rate set out in the Award up through judgment.  Titan should also receive interest on the attorneys' fees awarded by the Annulment Decision, so that Argentina fully compensates the harm it caused to Titan's predecessors-in-interest by pursuing a meritless annulment application.  And 28 U.S.C. § 1961(a) requires imposition of postjudgment interest on any federal-court judgment, so Titan is entitled to postjudgment interest on all the amounts it is owed until Argentina pays its debt in full.

Titan thus respectfully requests that this Court grant its motion for summary judgment and enter judgment in its favor without further delay.

## BACKGROUND

### I.    Argentina Expropriates Claimants' Investments In Two Argentinian Airlines

This case arises from a more than decade-long effort to obtain relief for Argentina's expropriation of foreign investments in two Argentinian airlines, Aerolíneas Argentinas S.A. and Austral-Cielos (collectively, the "Airlines").  Three Spanish companies—Teinver S.A. ("Teinver"), Transportes de Cercanías S.A. ("Transportes"), and Autobuses Urbanos del Sur S.A. ("Autobuses") (collectively, "Claimants")—invested in the Airlines in 2001 by acquiring a 99.2% stake in the Airlines' Spanish parent company.  Award ¶¶ 176-79, 370-72, 376, 481.

Claimants' investment in the Airlines was protected by a bilateral investment treaty between Argentina and Spain—the Agreement between the Argentine Republic and the Kingdom of Spain on the Promotion and Protection of Investments (the "Argentina-Spain Treaty," ECF No. 1-3).  In that treaty, Argentina committed to provide "fair and equitable treatment" to the investments of Spanish companies within Argentina's territory and to refrain from "obstruct[ing]"

the "management, maintenance, use," or "sale" of those investments or "expropriat[ing]" them without "appropriate compensation." *Id.*, arts. III(1), IV(1), V.

In 2008, Argentina flagrantly violated these commitments by unlawfully expropriating the Airlines. The Government of Argentina initially entered into a contract to purchase Claimants' indirectly owned shares of the Airlines at a price to be determined in accordance with a defined mechanism. Award ¶ 850. But Argentina abandoned that purchase contract several months later and instead acquired the Airlines "by way of expropriation without notice to . . . Claimants" or any compensation except a "symbolic" payment of 1 Argentine peso. *Id.* ¶¶ 166, 843, 855.

## II.    Claimants Seek Relief By Invoking Their Rights Under The ICSID Convention

Claimants sought to resolve their dispute with Argentina by filing a request with ICSID for arbitration under the ICSID Convention in December 2008, within a month of Argentina's unlawful expropriation. Award ¶¶ 6-7; Declaration of Matthew S. Rozen in Support of Petitioner's Motion for Summary Judgment ("Rozen Decl.") Ex. C ("Request for Arbitration"). The ICSID Convention is a treaty among 158 contracting nations—including Argentina, Spain, and the United States[1]—that provides a comprehensive framework for resolving investment disputes "between Contracting States and nationals of other Contracting States." ICSID Convention, pmbl. Arbitral tribunals constituted under the ICSID Convention are responsible for conclusively deciding both the merits of any dispute submitted to them and all issues pertaining to their jurisdiction. *Id.*, arts. 41, 48. By signing the ICSID Convention, Argentina agreed to "abide by" and "comply with" all awards issued pursuant thereto. *Id.*, art. 53(1).

---

[1] *See* ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 25, 2024), https://icsid.worldbank.org/sites/default/files/ICSID%203/2024%20-%20Aug%2025%20-%20ICSID%203%20-%20ENG.pdf.

The ICSID Convention provides for only a limited review of arbitral awards and assigns that power to an *ad hoc* annulment committee. *Id.*, art. 52. Under Article 52 of the Convention, that committee—not the courts of any Contracting State—decides whether an award should be set aside on the ground that the tribunal was not properly constituted, exceeded its power, acted corruptly, seriously departed from a fundamental rule of procedure, or failed to state the reasons on which the award was based. *Id.*, art. 52(1). In assigning this role to the annulment committee, the ICSID Convention differs from other regimes like the New York Convention, in which the enforcing court would determine if the award is subject to challenge. Argentina and the other parties to the ICSID Convention thus agreed that an ICSID arbitration award would be "binding" and enforceable in the courts of any Contracting State—including the United States—as "final judgment[s]" without being "subject to any appeal or to any other remedy except those provided for in th[e] Convention." *Id.*, arts. 53, 54.

In their request for arbitration, Claimants "invoked [Argentina]'s advance consent to ICSID arbitration contained in the [Argentina-Spain Treaty]." Award ¶¶ 6-7; *see* Request for Arbitration ¶¶ 42, 54 ("Argentina consented to ICSID jurisdiction when it signed and ratified the [Treaty]."). Article X of the Treaty provides for arbitration under the ICSID Convention upon satisfaction of prearbitration grievance procedures, so long as both Argentina and Spain are parties to the Convention. Argentina-Spain Treaty, art. X(1), (3), (4). In December 2012, the ICSID arbitral tribunal ("Tribunal") issued a Decision on Jurisdiction holding that Claimants had "satisfied the requirements" of Article X of the Treaty when they initiated ICSID arbitration proceedings and rejecting Argentina's arguments to the contrary. Award app. I ¶¶ 136, 333.

**III.    An ICSID Tribunal Awards Claimants More Than $300 Million, And An ICSID Annulment Committee Denies Argentina's Application To Annul The Award**

After years of arbitration before the Tribunal, including sixteen days of hearings, Award ¶¶ 35, 92, 134, the Tribunal issued its 398-page Award on July 21, 2017.  The Tribunal determined that Argentina had breached its obligations under the Argentina-Spain Treaty by:  (1) failing to provide "fair and equitable treatment" to the Claimants' investments within Argentina's territory, in violation of Article IV(1) of the Treaty; (2) "interfering with" the management, maintenance, use, and sale of Claimants' investments without justification, in violation of Article III(1); and (3) unlawfully "expropriating" the Airlines by taking them not in accordance with the law and failing to pay adequate compensation, in violation of Article V.  Award ¶¶ 166, 865, 925, 1040, 1068, 1147(a)-(c); *see* Argentina-Spain Treaty, arts. III(1), IV(1), V.  The Tribunal ordered Argentina to pay more than $320 million in compensation, nearly $3.5 million in legal fees and costs, and interest on both those amounts "compounded semi-annually at the six-month US Treasury Bill rate" "until payment in full."[2]  *Id.* ¶ 1147(d)-(f).

Upon its rendering, the Award was due in full and fully enforceable in the courts of each signatory state to the ICSID Convention, and subject to attack only through an annulment proceeding.  ICSID Convention, arts. 52-54.  On November 17, 2017, Argentina filed an application seeking annulment of the Award, and an ICSID *ad hoc* committee (the "Annulment Committee" or the "Committee") was constituted the following month.  Annulment Decision ¶¶ 8, 10.  The Committee held a Hearing on Annulment in February 2019, *id.* ¶ 41, and then denied Argentina's request for annulment on May 29, 2019, *id.* ¶ 258(1).  The Committee also determined that Argentina had "failed in all the arguments that it . . . advanced in order to seek the annulment

---

[2] The interest on the costs and fees began running upon the issuance of the Award, while the interest on the compensation began on December 30, 2008.  Award ¶ 1147(e)-(f).

of the Award" and so ordered Argentina to pay Claimants more than $1 million for their representation costs and expenses.[3]  *Id.* ¶¶ 256-57, 258(2).

## IV.    Titan Acquires All Rights In The Award And Promptly Acts To Enforce It

In November 2020, Claimants and Titan closed on a transaction to assign full title to the Award to Titan.  ECF No. 1 ("Pet.") ¶ 24.  On November 17, Titan executed an agreement with Teinver and Transportes in which those entities "assign[ed] to Titan" their "full title [in the Award] free of any security interest, lien or encumbrance . . . as well as any interest, rights or proceeds tied to the Award or the ICSID Arbitration."  Rozen Decl. Ex. A at 8-9, 15.  By its express terms, the assignment agreement entitled Titan to "assume absolute and exclusive control over the execution or monetization [of the Award] . . . based on its own judgment and decisions."  *Id.* at 15.  Then, on November 30, Titan executed a virtually identical agreement with Autobuses in which Autobuses likewise assigned to Titan its "full title" in the Award and "any interest, rights or proceeds" tied to the Award or the arbitration.  Rozen Decl. Ex. B at 8, 13.  By its express terms, this assignment agreement, too, gave Titan "absolute and exclusive control" over execution and monetization of the Award.  *Id.* at 13-14.

Argentina still refused to pay, so Titan promptly filed this petition on August 24, 2021, seeking to recognize and enforce the Award under the ICSID Convention and its implementing legislation, 22 U.S.C. § 1650a.  Titan promptly served Argentina on November 15, 2021, pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  *See* ECF No. 9.  Titan also mailed Argentina copies of the assignment agreements on November 19, 2021.  Rozen Decl. ¶ 8.[4]

---

[3] Argentina was also ordered to pay for "the entirety of the costs of the proceedings," which were deducted from advances that Argentina had already paid.  Annulment Decision ¶¶ 255-56.

[4] Titan later sent additional copies of these same assignment agreements to Argentina's counsel in this case on September 10, 2024.  Rozen Decl. ¶ 9.

Argentina then moved to dismiss on the ground that Titan's petition was time-barred.  ECF No. 12.  This Court denied that motion on August 19, 2024, holding that the petition was timely under the twelve-year statute of limitations that D.C. Code § 15-101 provides for enforcing a final judgment of the D.C. Superior Court.  ECF No. 20.  The Court reasoned that, "[g]iven the mandate of Section 1650a to treat an ICSID award 'as if [it] were a final judgment of a court of general jurisdiction of one of the several States,'" it makes sense to borrow the limitations period of "a law governing the enforcement of money judgments from D.C. Superior Court."  *Id.* at 5 (alteration in original).

Argentina then filed its Answer on September 3, 2024, asserting four defenses:  (1) the Court lacks subject-matter jurisdiction over this case brought by Titan, a "purported assignee"; (2) Titan "lacks authority" to enforce the Award because it "has not yet provided proof of a valid assignment"; (3) the statute of limitations bars Titan's claims; and (4) Titan's request for costs and attorneys' fees is "barred because the Annulment Decision does not contemplate or calculate such interest."  ECF No. 22 ("Answer") ¶¶ 38-41.  Argentina acknowledged that this Court had already rejected its statute-of-limitations defense, so it merely pleaded that defense to "preserv[e]" it "for appellate review."  *Id.* ¶ 40 & n.1.

Titan now moves for summary judgment and for entry of judgment in its favor.

## STANDARD OF REVIEW

Summary judgment is warranted when "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  The Court views all evidence in the light most favorable to the non-movant and draws all reasonable inferences in its favor.  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).  A fact is material for purposes of summary judgment only if it "might affect the outcome of the suit under the governing law," and a dispute is not genuine

unless "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986).

As discussed below, *see infra* Part II, the scope of this Court's review in this action to enforce an ICSID award is "'exceptionally limited.'"  *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 20-1708, 2023 WL 2914472, at *13 (D.D.C. Mar. 31, 2023).

## ARGUMENT

This Court can efficiently resolve this case in Titan's favor consistent with the "extremely limited" review of ICSID awards that the ICSID Convention and its implementing legislation authorize, *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515, 520 (D.C. Cir. 2023), because none of Argentina's remaining defenses poses any obstacle to enforcing the Award.  This Court has jurisdiction under the FSIA's waiver and arbitration exceptions, and the fact that Titan (rather than Claimants) seeks to enforce the Award does not change that.  And Titan was properly assigned all rights in the Award.  So there is nothing left to do but enforce all of the "pecuniary obligations" in the Award and the Annulment Decision.  22 U.S.C. § 1650a(a).

The Award's obligations include the compensation, costs, and fees set out in the Award, as well as its award of interest on those amounts.  The Annulment Decision, meanwhile, requires payment of the attorneys' fees Claimants incurred in defending against Argentina's meritless annulment request.  To fully compensate for those expenses, it is also appropriate to impose prejudgment interest on those additional fees.  On top of all those amounts, 28 U.S.C. § 1961 requires imposing postjudgment interest until Argentina pays in full.  This Court should enter judgment and order payment of the Award and the interest amounts without further delay.

## I.    This Court Has Jurisdiction Under The FSIA To Enforce The Award

The FSIA is the exclusive basis for a federal court's exercise of jurisdiction over a foreign state.  *Owens v. Republic of Sudan*, 864 F.3d 751, 763 (D.C. Cir. 2017).  Under the FSIA, foreign

states are "presumptively immune" from suit in U.S. courts, unless one of the FSIA's specific, enumerated exceptions applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). But once an exception is established and the foreign state is "not entitled to immunity," the FSIA grants federal courts subject-matter jurisdiction over all actions against foreign states. 28 U.S.C. § 1330(a).

Here, Argentina's Answer asserts vaguely that "as the purported assignee," Titan "has failed to establish subject-matter jurisdiction." Answer ¶ 38. But settled precedent makes clear that this Court has jurisdiction to enforce ICSID awards under two independent exceptions to FSIA immunity: the arbitration exception, 28 U.S.C. § 1605(a)(6), and the waiver exception, *id.* § 1605(a)(1). And nothing about Titan's status as assignee alters this Court's jurisdiction under either exception.

### A. This Court Has Jurisdiction Under The Arbitration Exception Because Argentina Agreed To Arbitrate Its Dispute With Claimants

The FSIA's arbitration exception vests this Court with jurisdiction, because this case is an action to "confirm an award" made pursuant to an agreement "by the foreign state," "with or for the benefit of a private party," to "submit to arbitration," if the "award is . . . governed by a treaty," such as the ICSID Convention, that is "in force for the United States" and that "call[s] for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). As the D.C. Circuit recently affirmed, jurisdiction exists under the arbitration exception so long as three "jurisdictional facts" are established: "'(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement.'" *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (quoting *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 & n.2 (D.C. Cir. 2015)).

All three jurisdictional facts are present here. *First*, the Argentina-Spain Treaty is an arbitration agreement "for the benefit of a private party." 28 U.S.C. § 1605(a)(6). The D.C.

Circuit explained in *NextEra* that "the arbitration provision in an investment treaty" constitutes an agreement "for the benefit of" third parties, and thus qualifies to establish jurisdiction under the arbitration exception, when it reflects an "'agreement between' the signatory countries to arbitrate certain disputes with investors of the other's country." 112 F.4th at 1101.

The Argentina-Spain Treaty fits that bill: It provides that a "[d]isput[e] arising between a Party and an investor of the other Party in connection with [covered] investments" can be "submitted to an international arbitral tribunal . . . [a]t the request of either party to the dispute" when the preconditions are met. Argentina-Spain Treaty, art. X(1), (3)(a). So Argentina and Spain each agreed that, at least in certain circumstances, the other's investors would be entitled to compel it to engage in "direct investor-state arbitration." *NextEra*, 112 F.4th at 1102-03. "That agreement is 'for the benefit' of [each] signatory's investors," who can rely on it to enable them to resolve their disputes with the other signatory nation through arbitration, and it "therefore satisfies the FSIA's arbitration exception." *Id.*

In addition, there is also an agreement "with" a private party here, 28 U.S.C. § 1605(a)(6): Claimants formed an agreement with Argentina when they accepted its "standing offer to arbitrate." *NextEra*, 112 F.4th at 1102. The Argentina-Spain Treaty's arbitration provision "operates as 'a unilateral offer to arbitrate' by each sovereign to investors of the other signatory countr[y]," which Claimants accepted "by 'filing . . . a notice of arbitration.'" *Id.* (omission in original); *see* Award ¶¶ 6-7 (noting that Claimants submitted a "request for arbitration" to ICSID that "invoked [Argentina]'s advance consent to ICSID arbitration"); Request for Arbitration ¶¶ 41, 54-56 (Claimants consenting to ICSID arbitration and invoking Argentina's "consen[t] to ICSID jurisdiction" in the Treaty). Indeed, the Treaty is functionally identical to the bilateral investment treaty between Ecuador and the United States in *Chevron*, which similarly contained a "standing

offer to . . . potential U.S. investors to arbitrate investment disputes" that the plaintiff "accepted in the manner required by the treaty."  795 F.3d at 205-06.  That agreement, just like the one here, sufficed to give rise to jurisdiction over "an action to confirm or enforce the award" that resulted from the arbitration.  *Id.*

*Second*, the Award obligates Argentina to pay Titan's predecessors-in-interest, who assigned their rights in the Award to Titan.  *See infra* Part II.

And *third*, "the ICSID Convention . . . govern[s] the [A]ward."  *Blasket Renewable Invs. v. Kingdom of Spain*, No. 23-2701, 2024 WL 4298808, at *6 (D.D.C. Sept. 26, 2024) (citing ICSID Convention, art. 54 (requiring Contracting Parties to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award")).  As a result, all three "jurisdictional facts" required under the arbitration exception are present here, and the FSIA authorizes this Court to hear Titan's petition.

**B.  This Court Has Jurisdiction Under The Waiver Exception Because Argentina Waived Its Immunity By Signing The ICSID Convention**

Jurisdiction also exists under the FSIA's waiver exception, which subjects a foreign state to jurisdiction in any case "in which [it] has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  To waive immunity by implication, a state need only "indicat[e] its amenability to suit" in U.S. court, *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994), by either:  (a) showing "a subjective intent to waive immunity"; (b) "tak[ing] an act that objectively can be interpreted as exhibiting an intent to waive immunity"; or (c) "tak[ing] acts that forfeit its right to immunity, irrespective of whether it has intended to do so," *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 202 (2d Cir. 1999).

Based on these principles, it is well settled that when a foreign state joins a treaty that "contemplate[s] arbitration-enforcement actions in other signatory countries, including the United

States"—as the ICSID Convention plainly does, *see supra*, at 4-5—it "waives its immunity from arbitration-enforcement actions" under the FSIA. *Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019). The D.C. Circuit indicated that this principle was "correc[t]" in *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999). And in *Tatneft*, the D.C. Circuit applied *Creighton* to hold that by signing the New York Convention—a treaty in which "signatories agree to enforce arbitral awards made in other signatory countries"—Ukraine waived its immunity to enforcement of arbitral awards under that Convention. 771 F. App'x at 9-10. The Second Circuit has applied the same rule to find waivers under both the ICSID Convention, *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013), and the New York Convention, *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 578-79 (2d Cir. 1993). And this Court has followed that rule in *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 7 (D.D.C. 2022); *Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*, 506 F. Supp. 3d 1, 11 (D.D.C. 2020), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022); and *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 190 (D.D.C. 2016).[5]

By "becoming a party to the ICSID Convention"—and agreeing that it would be subject to enforcement actions in the courts of every other signatory, including the United States—

---

[5] The D.C. Circuit recently observed that, while it has not "'formally adopted'" the rule that acceding to the ICSID Convention or the New York Convention waives immunity, it has "twice approvingly cited" *Seetransport* for that proposition. *NextEra*, 112 F.4th at 1100 (discussing *Creighton* and *Tatneft*). As an unpublished decision, *Tatneft* may not be binding on future panels of the D.C. Circuit—but it *is* binding on this Court. Unpublished decisions of the D.C. Circuit have the same "precedential value" that "the Supreme Court grants to its own . . . summary affirmances," *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011), which are binding on "lower courts," *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975). And in any event, *Tatneft* is correct for the reasons stated in the numerous decisions applying the same principle.

"Argentina waived its sovereign immunity." *Blue Ridge*, 735 F.3d at 84. The waiver exception thus provides an independent basis for this Court's jurisdiction.

### C. Federal Courts' Jurisdiction Under The FSIA Extends To Enforcement Actions By Assignees Of Arbitral Awards

This Court has jurisdiction even though it is Titan and not Claimants, the original award holders, that seeks to enforce the Award. "It is well established that the assignee or subrogee owns 'the substantive right' of the claimant." *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 533 F.3d 837, 844 (D.C. Cir. 2008) (quoting *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381 (1949)) (collecting cases). The "mere fact" that the assignee of a right seeks to enforce that right (including under the FSIA) "does nothing to weaken the relationship" between the assignee and the foreign state against which the right is being enforced, since the assignee "replace[s] for all effective purposes the original [holder]" of the right. *Byrd v. Corporacion Forestal y Indus. de Olancho S.A.*, 182 F.3d 380, 391 (5th Cir. 1999), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).

The text of the FSIA provides no reason to deviate from the standard rule that an assignee can enforce all the rights that its assignor gave it. The arbitration exception covers any "action . . . to enforce an [arbitral] agreement . . . or to confirm an award made pursuant to such an agreement to arbitrate," without any regard for who can seek to enforce the arbitral agreement or confirm the arbitral award. 28 U.S.C. § 1605(a)(6). And the waiver exception concerns only the actions of the foreign state; it makes no reference to who can sue. *See id.* § 1605(a)(1).

Indeed, courts regularly exercise jurisdiction over actions to enforce arbitral awards brought by the assignees of the original award holders. *See, e.g.*, *NextEra*, 112 F.4th at 1098, 1111 (finding jurisdiction under arbitration exception satisfied over action to enforce ICSID award by entity that was "transferred [the] rights" by the original holders); *Blasket*, 2024 WL 4298808, at

14

*3, *6, *14 (exercising jurisdiction under arbitration exception and enforcing ICSID award in suit by assignee of award's original holder); *see also Themis Cap., LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 512-13, 516-17 (S.D.N.Y. 2012) (exercising jurisdiction under waiver exception over action to enforce debt by assignees of original creditors), *judgment for assignees entered*, 35 F. Supp. 3d 457 (S.D.N.Y. 2014), *aff'd in part, rev'd in part on other grounds*, 626 F. App'x 346 (2d Cir. 2015). These courts have rightly "read the FSIA's arbitration exception to require only that an award be made pursuant to an agreement to arbitrate, irrespective of whether the claimant is an assignee," *Gretton Ltd. v. Republic of Uzbekistan*, No. 18-1755, 2019 WL 3430669, at *4 (D.D.C. July 30, 2019) (collecting cases), since nothing in the exception's plain language "suggests that an action [to confirm an arbitral award] must be brought by the party that entered into the arbitration agreement with the foreign state," *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 375 n.7, 377-82 (S.D.N.Y. 2012) (holding that both the FSIA and the ICSID Convention permit an assignee to enforce an award), *aff'd*, 735 F.3d 72. For that reason, a court can hear an assignee's claims regardless of "'whether [the] arbitration award was validly assigned.'" *Gretton*, 2019 WL 3430669, at *4 (quoting *Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 154 (D.D.C. 2018)). This Court can therefore exercise jurisdiction over Titan's petition to enforce the Award.[6]

---

[6] This Court also has personal jurisdiction over Argentina. Personal jurisdiction exists over a foreign state as to any claim over which the court has subject-matter jurisdiction, so long as the foreign state was properly served. 28 U.S.C. § 1330(b). The FSIA allows the Court to hear this case, and Titan successfully served Argentina on November 15, 2021, pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. *See* 28 U.S.C. § 1608(a)(2); ECF No. 9. Regardless, Argentina waived any objection to personal jurisdiction by failing to raise it in its motion to dismiss or its Answer. *See* Fed. R. Civ. P. 12(h)(1)(A)-(B).

## II.    Titan Holds All Rights In The Award And Is Entitled To Its Enforcement

Titan is the sole holder of all rights in the Award and the Annulment Decision and, as such, is entitled to judgment pursuant to the ICSID Convention and its implementing legislation.

Titan acquired its rights in the Award and the Annulment Decision through two assignment agreements.  On November 17, 2020, Teinver and Transportes assigned to Titan all their rights and interests in the Award, and on November 30, Autobuses did the same.  Rozen Decl. Exs A-B. Together, these agreements reflect the assignment to Titan of full title to the Award and any interest, rights, or proceeds tied to the Award or the ICSID arbitration (and, by extension, any interest in the Annulment Decision upholding the Award), by all three of the original holders of the Award—Teinver, Transportes, and Autobuses.  Titan is now the only entity that owns a stake in the Award.

As a result, Titan is entitled to judgment confirming the Award.  The ICSID Convention requires that a Contracting State's court must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  ICSID Convention, art. 54(1).  In implementing the Convention, Congress similarly provided that an enforcing court "shall be enforced and shall be given the same full faith and credit as if the award were" a final state-court judgment. 22 U.S.C. § 1650a(a).  Section 1650a was designed to make "enforcement . . . as simple as possible," on the premise that "where a monetary award is rendered and the party ordered to pay has funds in the United States, the prevailing party should be able to resort to U.S. courts to collect on the award, if that becomes necessary."  *Convention on the Settlement of Investment Disputes: Hearing Before the Subcomm. on Int'l Orgs. & Movements of the H. Comm. on Foreign Affairs*, 89th Cong. 41 (1966) (statement of Andreas F. Lowenfeld, Deputy Legal Adviser, Department of State), ECF No. 12-2, at 9.

Accordingly, when faced with an action to enforce an ICSID award, a federal court is "not permitted to examine [the] award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Valores Mundiales*, 87 F.4th at 515 (quoting *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017)). Indeed, Congress provided that the FAA's defenses to enforcement do not apply to ICSID awards, "reducing the scope of judicial review of ICSID awards below even the 'extremely limited' review available under the FAA." *Id.* at 520. Under Section 1650a, then, the court "'may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award.'" *Id.* at 515; *see also Blasket*, 2024 WL 4298808, at *6 (holding that Section 1650a "'immunize[s] ICSID awards" from substantive review (quoting *Mobil Cerro Negro*, 863 F.3d at 117)).

In light of this "largely 'perfunctory role'" that Congress assigned to federal courts in ICSID enforcement actions, ECF No. 20, at 8 (quoting *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-1457, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018)), a foreign state "[is] not . . . permitted to make substantive challenges to the [A]ward," *Mobil Cerro Negro*, 863 F.3d at 118. Titan validly holds an authentic ICSID award, so there is nothing left for the Court to do but enter judgment in Titan's favor confirming the Award.

### III.    The Court Should Enter Judgment In The Full Amount Of The Award And The Fees Awarded By The Annulment Decision, Plus Pre- And Postjudgment Interest

Because this Court's obligation to enforce the Award is clear, the only remaining question is the amount of the judgment. Here, the judgment should include the full amount of compensation ($320,760,000, Award ¶ 1147(d)) and costs and attorneys' fees ($3,494,807, *id.* ¶ 1147(f)) awarded by the Award—$324,254,807 in total—plus the "additional fees … awarded by the Annulment Committee," *Valores Mundiales*, 87 F.4th at 523, here, $1,017,512, Annulment Decision ¶ 258(2). It should also include pre- and postjudgment interest on each of these amounts.

### A.  The Judgment Should Include Prejudgment Interest On The Award Consistent With The Award's Plain Terms

Argentina's obligation to pay interest on the compensation, costs, and fees awarded by the Award follows from the Award itself, which expressly awarded interest on each of those amounts "until payment in full."  Award ¶ 1147(e)-(f).  The Award also specifies the interest rate for that interest:  "the six-month US Treasury bill rate compounded semi-annually."  *Id.*  This Court should enforce those "obligations imposed by the [A]ward," *Valores Mundiales*, 87 F.4th at 515, and order Argentina to pay prejudgment interest at the award rate on the amount of the Award and on the costs and fees until it has paid its debt in full.

The Court's duty to enforce the "pecuniary obligations" of an arbitral award, 22 U.S.C. § 1650a(a), requires that it give effect to the Award's interest provisions.  Interest, after all, is plainly a "pecuniary obligation":  "'Pecuniary' means 'of, relating to, or consisting of money; monetary,' and interest is monetary, for it involves the payment of money."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, No. 14-8163, 2015 WL 926011, at *2 (S.D.N.Y. Mar. 4, 2015) (quoting Black's Law Dictionary (10th ed. 2014)).  Section 1650a(a)'s "plain language" thus compels courts to "recognize and enforce" an ICSID tribunal's award of interest.  *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 19-46, 2022 WL 17370242, at *12 (D.D.C. Aug. 3, 2022) (quoting *Mobil Cerro Negro*, 2015 WL 926011, at *2), *report and recommendation adopted*, 2023 WL 3453633 (D.D.C. May 15, 2023), *aff'd*, 87 F.4th 510.

Accordingly, courts regularly order post-award, prejudgment interest on ICSID awards consistent with the terms of those awards.  *E.g.*, *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, No. 17-2559, 2021 WL 3662938, at *3 (D.D.C. Aug. 18, 2021) (noting parties' agreement "that the interest rates set out in the ICSID Award will apply post-award (but pre-judgment)"); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 16-1533, 2019 WL

2185040, at *7 (D.D.C. May 21, 2019) (holding that "the interest rate set forth in the Award will apply pre-judgment"); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 133-34 (D.D.C. 2012) (awarding judgment for interest pursuant to "plain language" of award); Order and Judgment, *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, No. 14-8163, ECF No. 6 (S.D.N.Y. Oct. 10, 2014) (awarding interest "provided in the Final Award"). This Court should do the same and enforce the Award's interest provisions.

### B. To Fully Compensate Titan For The Additional Attorneys' Fees Awarded By The Annulment Committee, The Court Should Award Prejudgment Interest On Those Fees

Because Argentina "failed in all the arguments that it . . . advanced in order to seek the annulment of the Award," the Annulment Committee ordered it to pay Claimants more than $1 million "on account of their representation costs." Annulment Decision ¶¶ 256-58. This Court should require payment of that amount. *See* 22 U.S.C. § 1650a. Although the Annulment Decision does not say whether Argentina must pay interest on those attorneys' fees, this Court should order Argentina to do so up through the date of judgment, with interest accruing at the prime rate.

"The primary purpose of prejudgment interest is 'to compensate the plaintiff for any delay in payment resulting from the litigation.'" *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 881 (D.C. Cir. 2021) (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997)); *accord West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). Awarding such interest also "'deters any attempt to benefit unfairly from inevitable litigation delay.'" *Stileks*, 985 F.3d at 881. District courts therefore have discretion to impose post-award, prejudgment interest so long as it is "'consistent with the underlying arbitration

award.'" *Id.* (quoting *Ministry of Def. of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1103 (9th Cir. 2011)).

Courts "generally grant" requests for prejudgment interests "on foreign arbitral awards, even when the award does not provide for prejudgment interest." *Archirodon Constr. (Overseas) Co. Ltd. v. Gen. Co. for Ports of Iraq*, No. 22-1571, 2024 WL 341066, at *7 (D.D.C. Jan. 30, 2024) (collecting cases). Indeed, in New York Convention cases there is a "presumption" in favor of awarding prejudgment interest "'when damages have been liquidated by an international arbitral award'"—even when the award is "silent" on post-award interest—absent a good reason to deviate from the ordinary rule. *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 163-64 (D.D.C. 2013), *aff'd*, 603 F. App'x 1 (D.C. Cir. 2015).

Awarding prejudgment interest is appropriate here to compensate Titan (standing in Claimants' shoes) for Argentina's delay in payment, and to deter foreign states like Argentina from withholding payment on ICSID awards after they have exhausted their only lawful means for challenging those awards—annulment proceedings. Prejudgment interest is appropriate when enforcing an ICSID award for the exact same reasons that justify its liberal use in New York Convention cases: (1) such interest compensates the award holder "'for the loss of the use of money he otherwise would have had'"; (2) both the ICSID Convention and its implementing legislation are "'silent'" on the matter; (3) the "limited" nature of a court's review of an ICSID award does not prevent it from handling "collateral" matters like prejudgment interest; and (4) foreign states would have an "'incentive'" to withhold payment, contrary to the Convention's purposes, if courts did not award interest. *Ministry of Def.*, 665 F.3d at 1102-03. And the fact that the Award granted interest on the costs and fees of the arbitration provides even more reason to think that imposing interest on the costs of the annulment would be both "consistent with the

underlying Award" and "appropriate to compensate [Titan] for the [more than seven] years [Argentina] has resisted enforcement." *Cf. LLC Komstroy v. Republic of Moldova*, No. 14-1921, 2019 WL 3997385, at *14 (D.D.C. Aug. 23, 2019) (awarding prejudgment interest where award included pre-award interest but was silent regarding post-award interest), *aff'd in relevant part and remanded sub nom. Stileks*, 985 F.3d 871.

This Court should award prejudgment interest at the "prime rate," the rate that banks charge for short-term unsecured loans to credit-worthy customers. *Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 603 F. App'x 1, 5 (D.C. Cir. 2015). The D.C. Circuit "has repeatedly concluded that the use of the prime rate in the award of prejudgment interest reflects an appropriate exercise of the district court's discretion." *Id.* (citing *Oldham*, 127 F.3d at 54, and *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450 (D.C. Cir. 1996)). That makes sense, since the prime rate reflects what Claimants and Titan would have had to pay if they borrowed money to replace the amount they were owed—and the rate of return Argentina would have gotten from investing the money that it wrongfully failed to pay. *See Forman*, 84 F.3d at 450-51.

### C.  Titan Is Entitled To Postjudgment Interest

Postjudgment interest on the Award, the fee award in the Annulment Decision, and the accumulated prejudgment interest on those amounts, is "'mandatory.'" *Archirodon Constr.*, 2024 WL 341066, at *7. Under 28 U.S.C. § 1961(a), interest "*shall* be allowed on any money judgment in a civil case recovered in a district court." (emphasis added)). That unequivocal language "'do[es] not permit of the exercise of judicial discretion in its application.'" *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989). Section 1961 also supplies the rate of interest: "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). This Court should enforce § 1961's

requirements and award postjudgment interest on top of all the other amounts to which Titan is entitled, to be paid until Argentina satisfies its debt in full.

## CONCLUSION

For the foregoing reasons, Titan respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in its favor requiring Argentina to pay:  (1) $324,254,807 on the Award (comprising $320,760,000 in compensation and $3,494,807 in costs and fees), plus prejudgment interest, compounded semi-annually at the six-month U.S. Treasury Bill rate; (2) $1,017,512 on the Annulment Decision, plus prejudgment interest at the prime rate; and (3) postjudgment interest on all those amounts at the federal statutory postjudgment interest rate.

Dated: October 4, 2024

Respectfully submitted,

/s/ Matthew D. McGill
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Ankita Ritwik, D.C. Bar #1024801
aritwik@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Titan Consortium 1, LLC*